Mark T. ALLEN, M.D., Petitioner

v.

COMMONWEALTH of Pennsylvania, INSURANCE DEPARTMENT, Medical Care Availability and Reduction of Error Fund, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 31, 2006.
Decided May 3, 2006.
Publication Ordered July 18, 2006.

Peter W. Baker, Philadelphia, for petitioner.

Zella Smith Anderson, Department Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Mark T. Allen, M.D. (Dr. Allen) appeals from an order of the Insurance Commissioner (Commissioner) denying his request for an abatement of his Medical Care Availability and Reduction of Error Fund (MCARE fund) assessment for 2003 because he filed his request beyond the date set forth in Act 44[1] for inclusion in the Health Care Provider Retention Program (Retention Program).

In 2002, to replace the fund commonly known as the CAT fund,[2] the Medical Care Availability and Reduction of Error Act (MCARE Act)[3] created the MCARE fund to handle malpractice claims against participating health care providers.[4] The MCARE fund was funded by an annual assessment on each participating health care provider.[5] In order to retain health care providers in Pennsylvania, Act 44 created the Retention Program to offer an abatement of between 50% and 100% of the MCARE fund assessment that participating health care providers had to pay for calendar years 2003 and 2004.[6] A health care provider requesting abatement for a particular year had to file an application with the Department of Insurance (Department) no later than February 15th of the following year.[7] Because February

---

1. Act of December 23, 2003, P.L. 237, *as amended*, formerly 40 P.S. §§ 1301–A–1310–A, repealed by the Act of December 22, 2005, P.L. 458, 40 P.S. §§ 1303.1101–1303.1115. Section 3 of Act 44 added article XIII–A to the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§ 101–1503. This dispute arose when Act 44 was in effect and is not affected by its subsequent repeal.

2. The CAT fund was more formally known as the Medical Professional Liability Catastrophe Loss Fund. The MCARE fund assumed its money, rights, liabilities and obligations. *See* Section 712(b) of the MCARE Act, 40 P.S. § 1303.712(b).

3. Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. §§ 1303.101–1303.1115. The MCARE Act was extensively amended by the Act of December 22, 2005, P.L. 458, the same act that repealed Act 44, but these amendments do not apply to this dispute.

4. Section 712(a) of the MCARE Act, 40 P.S. § 1303.712(a), provides:

   There is hereby established within the State Treasury a special fund to be known as the Medical Care Availability and Reduction of Error Fund. Money in the fund shall be used to pay claims against participating health care providers for losses or damages awarded in medical professional liability

actions against them in excess of the basic insurance coverage required by section 711(d), liabilities transferred in accordance with subsection (b) and for the administration of the fund.

5. *See* Section 1301–A of the Public Welfare Code, formerly 62 P.S. § 1301–A (defining assessment) and Section 712(d) of the MCARE Act, 40 P.S. § 1303.712(d) (describing assessments).

6. Section 1302–A of the Public Welfare Code, since repealed, provided at the relevant time:

   There is hereby established within the Insurance Department a program to be known as the Health Care Provider Retention Program. The Insurance Department, in conjunction with the department, shall administer the program. The program shall provide assistance in the form of assessment abatements to health care providers for calendar years 2003 and 2004.

7. Section 1304–A(a) of the Public Welfare Code, since repealed, provided at the relevant time:

   A health care provider may apply to the Insurance Department for an abatement of the assessment imposed for the previous calendar year. The application must be submitted by February 15 of the current

15th fell on a Sunday in 2004 and February 16th was a legal holiday, a health care provider had to file an application by February 17, 2004, in order to obtain abatement for 2003.[8]

Dr. Allen requested abatement of his MCARE fund assessment for 2003 on April 1, 2004, 44 days after the February 17, 2004 deadline. In his request, he stated that he failed to submit a timely application because he was not aware of the deadline. The Department referred Dr. Allen's request to the Administrative Hearings Office and the parties agreed that a hearing would be resolved on the facts contained in a joint stipulation of facts.

The stipulations provided that Dr. Allen was a licensed health care provider practicing in Pennsylvania and a participant in the MCARE fund and its predecessor fund during the relevant time period. He discussed the abatement program with his insurance agent in January 2004, expressed his willingness to stay in Pennsylvania for the next two years, and shared his desire to apply for abatement. The insurance agent informed Dr. Allen that the filing process had not been finalized and he did not apply for abatement on Dr. Allen's behalf. During the relevant time period, Dr. Allen moved his primary practice and his former office manager did not provide him with any abatement information. As a sole practitioner, Dr. Allen did not hear about the abatement program from other doctors. Additionally, he was out of the country during the critical time and did not submit an abatement application by the February 17, 2004 deadline. On April 1, 2004, Dr. Allen wrote to the MCARE fund and Governor Rendell requesting that his application be accepted even though he missed the original deadline.

■ The Commissioner found that there was no basis to allow a late filing either factually or legally. Because Dr. Allen knew about the abatement program from his insurance agent in January, she found that he could not claim that it was reasonable for him to rely on the agent to make the filing because it was his obligation to follow up and make sure his agent timely filed the abatement application. The Commissioner also found it to be irrelevant that Dr. Allen's application was filed within a relatively short time after the deadline because Act 44 provided no exception for a late application on the basis that the delay was non-prejudicial. Finally, she found that Act 44's mandate to file an application by a specific time was clear and the Department had no flexibility, discretion or statutory authority to waive the deadline in the name of public policy or as a matter of grace. Dr. Allen then filed this appeal.[9]

■ Dr. Allen contends that the Commissioner erred in not allowing a late filing of his application for abatement of his MCARE fund assessment for 2003 because Act 44's application deadline should be liberally construed to allow for the filing of a late application, especially where the delay

---

calendar year and be on the form required by the Insurance Department.

8. 1 Pa.C.S. § 1908 provides:
    ... Whenever the last day of any such period shall fall on Saturday or Sunday, or on any day made a legal holiday by the laws of this Commonwealth or of the United States, such day shall be omitted from the computation.

9. Our scope of review of an administrative agency's adjudication is limited to whether the adjudication violates constitutional rights, is not in accordance with agency procedure or with applicable law, or any finding of fact necessary to support the adjudication is not based upon substantial evidence. *Connecticut General Life Insurance Company v. Pennsylvania Life and Health Insurance Guaranty Association,* 866 A.2d 465 (Pa.Cmwlth.2005).

was *de minimis* and non-prejudicial. In effect, Dr. Allen is arguing that the Commissioner has administrative discretion to extend the time period for the filing of an abatement application in such circumstances. However, Act 44 was quite clear in that "the application **must** be submitted by February 15 . . ." and strict compliance with application standards is required, especially where disbursement of public funds is at issue. *Nayak v. Department of Public Welfare*, 107 Pa.Cmwlth. 504, 529 A.2d 557 (1987). Because Act 44 did not give general discretion to the Department or specific exceptions to the filing deadline, an untimely application may be excused only if it is allowed *nunc pro tunc* due to a breakdown in the administrative process or extraordinary circumstances. *See Marconi v. Insurance Department*, 163 Pa. Cmwlth. 23, 641 A.2d 1240 (1994).

█ Dr. Allen alleges that there was a breakdown in the application process because the enactment of Act 44 was hurried, and physicians were confused and not fully informed about its passage and requirements. To support his allegations, he points to the following: the passage of the Retention Program on December 19, 2003, the Friday leading to the Christmas and New Year holiday period, did not result in a large amount of publicity so that ·physi-

cians would be aware of its passage; [10] it created a complicated and entirely new procedure to be administered by physicians; and the comparatively short deadline for the Retention Program's 2003 abatement compared to a year's notice in the 2004 abatement program. All of this, he contends, leads to the conclusion that the administrative process broke down and that the Commissioner should have a permitted a *nunc pro tunc* filing.

Regardless of when Act 44 was enacted, the lack of publicity regarding its passage, the short time allotted health care providers to file an application for 2003 and that he did not receive personal notice of its enactment, Dr. Allen had been informed by his insurance agent of the abatement program in January 2004 but took no action to file or have his agent or someone else timely file the appropriate forms.[11] Moreover, Dr. Allen's contention that he fell within the late filing exception created by *Bass v. Commonwealth*, 485 Pa. 256, 401 A.2d 1133 (1979),[12] because he reasonably relied on his insurance agent to file for abatement to constitute a non-negligent failure to file the appeal, is flawed because the stipulations did not state that the insurance agent agreed to file an abatement application on his behalf.

---

10. Dr. Allen also cites to press releases issued by the Governor that purportedly misled physicians to believe that an abatement program would not be enacted and by the Commissioner on February 9, 2004, that reminded physicians that the filing date was February 15, 2004, when it was actually February 17, 2004. Those press releases were not part of the stipulations.

11. *See Upper Allegheny Joint Sanitary Authority v. Department of Environmental Resources*, 130 Pa.Cmwlth. 106, 567 A.2d 342 (1989) (failure to take necessary precautions to ensure compliance with a filing deadline does not constitute a special circumstance excusing late filing.)

12. In *Bass*, a secretary's illness and absence from the office caused an appeal not to be filed and upon her return, she notified her employer, appellant's counsel, who then sought permission to file four days late on a *nunc pro tunc* basis. Our Supreme Court held that where an appeal is not timely because of non-negligent circumstances, either as they relate to appellant or his counsel, and the appeal is filed within a short time after the appellant or his counsel learns of and has an opportunity to address the untimeliness, the time period which elapses is of very short duration, and appellee is not prejudiced by the delay, the court may allow a *nunc pro tunc* appeal.

Because the General Assembly in Act 44 did not provide any discretion or flexibility for its application deadline for the Retention Program, and Dr. Allen failed to establish a breakdown in the administrative process or extraordinary circumstances justifying a late filing, the Commissioner did not err in denying his application *nunc pro tunc.* Accordingly, the decision of the Commissioner is affirmed.

## ORDER

AND NOW, this *3rd* day of *May*, 2006, the order of the Insurance Commissioner, dated March 28, 2005, No. MM04–06–015, is affirmed.