**Ernest E. COPE, M.D., Petitioner**

v.

**INSURANCE COMMISSIONER OF The COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 11, 2008.

Decided Aug. 18, 2008.

---

**6.** Because of our disposition of this case, we need not discuss the remaining preliminary objections.

Wallace H. Bateman, Jr. and Joel Steinman, Perkasie, for petitioner.

Cindy E. Sheaffer, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, SMITH-RIBNER, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, and SIMPSON, Judge.

OPINION BY Judge COHN JUBELIRER.

Ernest E. Cope, M.D. (Provider) filed a Petition for Review of the Adjudication and Order of the Insurance Commissioner of the Commonwealth of Pennsylvania (Commissioner) affirming the decision of the Insurance Department, Medical Care Availability and Reduction of Error (MCARE) Fund (Department), to deny defense and first-dollar indemnity insurance coverage under Section 715 of the MCARE Act,[1] 40 P.S. § 1303.715(a), to Provider in connection with a medical malpractice lawsuit that was filed against him.

Preliminarily, we note that the MCARE Act created the MCARE Fund to pay claims against participating health care providers for losses or damages awarded against them in professional liability actions. Section 712 of the MCARE Act, 40 P.S. § 1303.712(a). The MCARE Fund generally functions as a secondary insurer to provide excess coverage to medical providers with damages that exceed their primary insurance coverage. *Id.* Section

715 provides an exception to the Department's role as an excess provider, requiring the Department to act as a primary insurer and provide first-dollar indemnity and defense to health care providers for eligible claims. In order to be eligible for coverage, Section 715 requires that the claim be made against an eligible health care provider more than four years after the alleged malpractice occurred, and filed within the applicable statute of limitations. Additionally, the Department must receive a written request for Section 715 coverage within 180 days of a health care provider's first notice of the claim. At issue here is whether Provider had notice of the claim for purposes of Section 715 when he received a writ of summons that contained no factual information.

The Commissioner found the following facts in his November 5, 2007 Adjudication and Order (A & O).[2] Provider was a licensed health care provider in Pennsylvania and a participating health care provider in the Medical Professional Liability Catastrophe Loss Fund (CAT Fund) and its successor, the MCARE Fund.[3] (Joint Stipulation of Facts before the Insurance Commissioner (Stipulation) ¶ 1.) Provider was subject to the provisions of the Health Care Services Malpractice Act[4] and the MCARE Act. (Stipulation ¶ 1.) Provider maintained his primary medical malpractice insurance coverage through Doctor's Insurance Reciprocal (DIR), which went into receivership in 2003.[5] On May 24,

---

1. Act of March 20, 2002, P.L. 154, No. 13, *as amended,* 40 P.S. §§ 1303.101–1303.1115.

2. The parties in the present appeal filed a Joint Stipulation of Facts, which resolved all factual issues and was submitted in lieu of a hearing. (A & O at 2.)

3. "The MCARE fund assumed [the CAT Fund's] money, rights, liabilities and obligations. *See* Section 712(b) of the MCARE Act, 40 P.S. § 1303.712(b)." *Allen v. Insur-*

*ance Department,* 903 A.2d 65, 66 n. 2 (Pa. Cmwlth.2006).

4. Act of October 15, 1975, P.L. 390, No. 111 (Act 111), *as amended,* 40 P.S. §§ 1301.101–1303.1116 (superseded.)

5. Counsel for the Department stated at oral argument that health care providers usually report claims filed against them to their insurance company, which then notifies the Department. In this case, Provider had to re-

2004, a Praecipe for Writ of Summons (Summons) was filed in the Court of Common Pleas of Bucks County captioned "Morton Kayser v. Ernest E. Cope, III, M.D. and Upper Bucks Orthopedic Associates, Docket No. 0403364–29–2." (Kayser Case). The writ of summons was served on Provider on May 25, 2004. (Stipulation ¶ 3.) On June 17, 2004, an Amended Praecipe for Writ of Summons (Amended Summons) was filed in the Kayser Case, adding Joanne Kayser as a plaintiff. (Amended Summons dated June 17, 2004, Exhibit 2 to Stipulation.) The Amended Summons was served on Provider on June 22, 2004. (Stipulation ¶ 5.) The Amended Summons stated in its entirety the following:

> To: Ernest E. Cope, III, M.D. and Upper Bucks Orthopedic Associates
>
> You are notified that the above-named plaintiff(s) has/have commenced an action against you.[6]

(Amended Summons.) The Commissioner stated that "[a]s is customary for writs of summons, neither the original writ nor the amended writ contained details about the Kayser claim." (A & O at 6.) Therefore, neither the Summons nor the Amended Summons contained factual allegations, or any other information, about the nature of the Kayser Case. Approximately nineteen months later, the Kaysers filed and served a Civil–Action Complaint (Exhibit 3 to Stipulation (Complaint)) in the Kayser Case on January 27, 2006.[7] (Stipulation ¶ 6.) Provider received, by mail, a copy of the Complaint on February 1, 2006. (Stipulation ¶ 7.) The Complaint contained factual allegations of Provider's alleged professional negligence and specified that the claims against him were for medical malpractice, lack of informed consent, and loss of consortium. The parties to the present appeal stipulated that the starting date of the alleged malpractice by Provider was April 24, 2000 and the ending date was June 22, 2000. (Stipulation ¶ 9.)

On February 13, 2006, the Department received a MCARE claim reporting form (MCARE Fund Claim Report by Insurer or Self–Insurer (C–416), Exhibit 4 to Stipulation) from Provider requesting Section 715 coverage for the Kayser Case. (Stipulation ¶ 8.) Provider noted on the C–416 both the dates of receipt of the Amended Summons and the Complaint. The Department denied Section 715 coverage to Provider for the Kayser Case on the basis that Provider had not notified it of the claim in the timeframe required by Section 715. (Letter to Provider from MCARE Fund Claims Manager Carole Z. Strickland, dated February 23, 2006, Exhibit 5 to Stipulation.) In determining whether Provider made his written request for Section 715 coverage within 180 days of his first notice of Kayser's claim, the Department

port the claim directly to the Department because his primary insurance carrier was in receivership.

6. Pennsylvania Rule of Civil Procedure No. 1351 requires that a writ of summons include the county the action is brought in, a caption, language similar to that contained in the Summons in this case, and a dated signature line for the Prothonotary and clerk, with room for the Seal of the Court.

7. The Complaint states, in part, that Provider performed surgery on Kayser on June 1, 2000. Provider saw Kayser on June 12 in the office with significant pain complaints. Provider performed a redo of the surgery on June 22, 2000. Kayser had a foot drop following the June 22 surgery. On June 26, 2000, Kayser was seen by Provider in the office with continued significant right leg pain and numbness in the foot. On July 10, 2000, Kayser came in again with complaints of significant right leg pain and numbness in the foot. Kayser continued to have foot throb and other symptoms following discharge from Provider's care on December 11, 2000. (*See* Complaint ¶¶ 12–24.)

considered Provider's first notice of the claim to be the date Provider was served with the Amended Summons in June 2004, rather than the date Provider received the Complaint in February 2006. Provider timely appealed the Department's denial of Section 715 coverage. The Commissioner appointed a presiding officer for the matter on April 3, 2006. On June 8, 2006, the presiding officer directed the parties to file a joint stipulation of facts by June 30, 2006.

On November 5, 2007, the Commissioner issued his A & O affirming the Department's determination to deny benefits to Provider.[8] The Commissioner found that Provider was aware that the Amended Summons was a claim for professional liability since he notified his primary medical malpractice carrier one day after being served with the Amended Summons, and the Amended Summons named as defendants Provider, in his capacity as a doctor, and his professional practice.[9] (A & O at 10.) The Commissioner further determined that Provider should have notified the Department of the claim when he received the Amended Summons, since the

language of Section 715 requires a provider "to report the claim to Mcare promptly after receiving first notice of a claim for professional liability." (A & O at 11.) The Commissioner also noted that the reporting period allows a provider to confirm that Section 715 applies by reviewing the plaintiff's medical records, pursuing discovery, or obtaining a rule upon the plaintiff to file a complaint.[10] (A & O at 13.) Thus, the Commissioner concluded that the Department did not receive a written request for Section 715 benefits within 180 days from when notice of the claim was first given to Provider. (A & O at 13.)

On appeal, Provider argues that the Commissioner erred as a matter of law in finding that a medical provider's 180–day statutory time period to request Section 715 benefits begins to run upon service of a bare writ of summons.[11] Provider also argues that there is no substantial evidence in the record to enable the Commissioner to find that Provider knew that Kayser's claim was for medical malpractice at the time he was served with the Amended Summons.

---

8. This case was adjudicated concurrently with *Upper Bucks Orthopedic Associates v. Insurance Commissioner,* No. 2218 C.D.2007 (Pa. Cmwlth. Aug. 18, 2008). (A & O at 2.)

9. We believe that the references to "the writ of summons" made throughout the Commissioner's A & O and the Department's Brief refer to the Amended Summons, since the date of the Amended Summons was used by the Department to deny Section 715 coverage to Provider.

10. Pennsylvania Rule of Civil Procedure No. 1037(a) provides, in relevant part: "If an action is not commenced by a complaint, the prothonotary, upon praecipe of the defendant, shall enter a rule upon the plaintiff to file a complaint."

11. Provider separates this argument into two issues, which he lists as:

2. Whether the Commissioner erred as a matter of law in concluding that a medical provider's statutory time period to request § 715 coverage under the MCARE Act began to run at the time that the medical provider was served with a writ of summons?

. . . .

3. Whether the Commissioner erred as a matter of law in failing to conclude that a medical provider's statutory time period to request § 715 coverage under the MCARE Act only began to run at the time that the medical provider first received information sufficient to enable him to ascertain that a claim asserted against him was for professional liability?

(Provider's Br. at 4.) However, in his argument, Provider recognized that this is one inter-related issue which he presents as one section of his argument. (Provider's Br. at 16.)

Provider first contends that the 180–day window to request Section 715 coverage from the Department does not start upon receipt of a bare writ of summons.[12] In support of this contention, Provider argues that a bare writ of summons should not constitute "notice of the claim" under Section 715 because it does not contain sufficient information for a health care provider to determine whether Section 715 applies to the claim. In opposition, the Department argues that the Commissioner correctly found that the plain meaning of Section 715 requires that the date of service of the summons should be used to start the 180–day period, and that this finding is entitled to deference.[13] The Department notes that a claim is defined in Pennsylvania Rule of Civil Procedure No. 1001(b)(1) as a civil action. (Department's Br. at 15.) Pursuant to Pennsylvania Rule of Civil Procedure No. 1007, a civil action can be commenced by filing a praecipe for a writ of summons or a complaint. Thus, the Department contends that the Amended Summons constitutes first notice of the claim under Section 715, and that Provider should have reported the claim within 180 days of receiving the Amended Summons. The Department also contends that Provider could have reviewed Kayser's medical records, obtained discovery or ruled the plaintiff to file a complaint in order to ascertain whether the claim qualified under Section 715.

This Courts review of an agency adjudication "is limited to whether the adjudication violates constitutional rights, is not in accordance with agency procedure or with applicable law, or any finding of fact necessary to support the adjudication is not based upon substantial evidence." *Allen v. Insurance Department*, 903 A.2d 65, 67 n. 9 (Pa.Cmwlth.2006). "Generally, substantial evidence is such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Aegis Sec. Ins. Co. v. Pennsylvania Insurance Department*, 798 A.2d 330, 333 (Pa. Cmwlth.2002). As to issues of statutory interpretation, this Court's scope of review is plenary and the standard of review is de novo. *Bender v. Pennsylvania Insurance Department*, 893 A.2d 161, 162 (Pa. Cmwlth.2006). "[W]hile deference may be given to an agency's interpretation of its statute," such deference is unwarranted "where 'the meaning of the statute is a question of law' " and when the court is " 'convinced that the agency's interpretation is unwise or erroneous.' " *Connecticut Gen. Life Ins. Co. v. Pennsylvania Life and Health Ins. Guar. Ass'n*, 866 A.2d 465, 467 (Pa.Cmwlth.2005) (quoting

---

**12.** We note that the question of whether a writ of summons triggers the beginning of the 180–day period has arisen previously, but has not been decided. *See Pennsylvania Med. Soc'y Liab. Ins. Co. v. Medical Professional Liability Catastrophe Loss Fund*, 577 Pa. 87, 99 n. 12, 842 A.2d 379, 386 n. 12 (2004) (Supreme Court noted that the issue of whether the writ or the complaint commenced the notice period was not properly before the Court and should be determined on remand; however on remand, the cases were dismissed for failure to respond to a rule to show cause with no further opinions or orders).

**13.** The Department relies upon the following principles of statutory construction, which require that: (1) "When the words of a statute are clear and free from all ambiguity, the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit" (1 Pa.C.S. § 1921(b)); (2) The words of a statute are to be construed "according to their common and approved usage" (1 Pa.C.S. § 1903(a)); (3) When ascertaining the General Assembly's intent, it is presumed that the legislature "does not intend a result that is absurd, impossible of execution or unreasonable" (1 Pa.C.S. § 1922(1)); and that the legislature "intends the entire statute to be effective and certain." (1 Pa.C.S. § 1922(2)). (Department's Br. at 15.)

*Rosen v. Bureau of Professional and Occupational Affairs, State Architects Licensure Board,* 763 A.2d 962, 968 (Pa.Cmwlth. 2000)).[14]

[redacted] We must first determine to what the language "the claim" refers. Section 715 states, in pertinent part:

(a) **General Rule.**—If a medical professional liability claim against a health care provider who was required to participate in the Medical Professional Liability Catastrophe Loss Fund under section 701(d) of the act of October 15, 1975 (P.L. 390, No. 111), known as the Health Care Services Malpractice Act, is made more than four years after the breach of contract or tort occurred and if *the claim* is filed within the applicable statute of limitations, *the claim* shall be defended by the department if the department received a written request for indemnity and defense within 180 days of the date on which notice of *the claim* is first given to the participating health care provider or its insurer.

40 P.S. § 1303.715(a) (emphasis added). The plain language of Section 715 only imposes a duty upon the Department to defend claims that meet the requirements for Section 715 coverage, that is, claims which are: 1) medical professional liability claims; 2) against health care providers required to participate in the CAT fund; and 3) made more than four years after the breach of contract or tort occurred.[15] In determining what claim the statute refers to as "*the* claim," we must read the entire paragraph as a whole. Section 715 uses the term "*the claim*" three times, the third time in connection with the 180–day notice requirement. The language "*the* claim" follows the description, at the beginning of the section, of "a medical professional liability claim against a health care provider ... made more than four years after the breach of contract or tort occurred." Thus, the use of the language "*the* claim" in all three places, including the notice requirement, refers to a claim that qualifies for Section 715 coverage by meeting the three requirements. Therefore, a written request for coverage must be given within 180 days of the date the provider is given notice of a claim that qualifies for Section 715 coverage.[16]

---

14. We note that the Department argues that the proper standard of review is articulated in *Winslow–Quattlebaum v. Maryland Ins. Group,* 561 Pa. 629, 635, 752 A.2d 878, 881 (2000). However, that case involves an agency interpreting a statute in its rulemaking capacity, and not in its adjudicative capacity. The present case involves an agency, the Insurance Commissioner, acting in its adjudicative capacity; thus, the standard of review articulated in *Winslow–Quattlebaum* is not applicable to the present appeal.

15. *See Pennsylvania Med. Soc'y Liab. Ins. Co. v. Medical Professional Liability Catastrophe Loss Fund,* 577 Pa. 87, 97, 842 A.2d 379, 385 (2004), in which the Pennsylvania Supreme Court noted that the obligations of the CAT fund under Section 605 of Act 111, 40 P.S. § 1301.605, which provided similar coverage for claims now codified under Section 715, "represent a specialized statutory duty with express prerequisites attached by the Legisla-

ture in an arena that ... has become highly technical."

16. We note that the notice provision in Section 715 is less specific than what is usually contained in private insurance contracts. Contracts that relate to "occurrence" policies have required that an insured provide, as soon as practicable, written notice of an accident, occurrence, or loss which includes information identifying the insured; the time, place, and circumstances of the incident; the names and addresses of the injured and available witnesses. *See, e.g., Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 69–70, 371 A.2d 193, 194–195 (1977). The language "as soon as practicable" has been interpreted to mean notice must be provided within a reasonable time depending on the facts and circumstances of each case. *Id.* at 70, 371 A.2d at 195. The language of notice provisions in "claims-made" policies have stated that the

The legislature used different language in Section 714 of the MCARE Act, 40 P.S. § 1303.714(a), which relates to medical professional liability claims that do *not* fall under Section 715. Section 714 specifically requires an insurer or self-insured provider to "promptly notify the department in writing of *any* medical professional liability claim." 40 P.S. § 1303.714(a) (emphasis added). Had the legislature intended that a provider be required under Section 715 to notify the Department of *any* medical professional liability claim, it would have used that same language. Since the legislature did not refer to "*any* claim" but, rather, referred to "*the* claim", which describes a claim under Section 715, it therefore follows that the legislature intended that the 180–day reporting period would begin when the medical provider is first given notice that *the* claim against him is eligible for Section 715 coverage.

█ Receiving a bare writ of summons, such as was received here, does not by itself provide notice that a claim is eligible for Section 715 coverage because it does not contain information that would enable a health care provider to make that determination. In order to determine whether a writ is for a claim under Section 715, a health care provider would need to know whether the claim is for medical professional liability and whether it was filed more than four years after the tort occurred. A bare writ of summons does not contain information about the nature of the claims asserted; the applicable dates; or a description of any alleged wrongful acts. *See Rosmondo v. Life Ins. Co. of North America,* 530 Pa. 37, 42, 606 A.2d 1172,

1174 (1992) (Larson, J. dissenting) (stating that a bare writ of summons "fails to notify the defendant of the nature and extent of the claims being asserted.")

Furthermore, the Department's own procedures show that a bare writ of summons, such as was received in this case, provides insufficient information to determine Section 715 eligibility. The C–416, which a provider must submit to the Department to request coverage for a medical professional liability claim, including Section 715 coverage, requires information such as the starting and ending dates of the alleged malpractice, the nature of the treatment giving rise to the claim, the principal injury alleged and the severity of the injury. (C–416.) None of this information can be obtained from a bare writ of summons and, without such information, the C–416 states that it will be returned to the requesting health care provider.[17] Also, the Department admits that had Provider notified the Department of the Amended Summons, the Department would have waited until it had sufficient information to determine whether Provider's claim qualified for Section 715 coverage. (Department's Br. at 18.) Additionally, Counsel for the Department admitted at oral argument that the Department would not obtain a rule upon the plaintiff to file a complaint and would refrain from appointing counsel until it determined that a claim qualified for Section 715 coverage, which it could not do from a bare writ. Thus, a bare writ of summons cannot constitute notice of *the* claim under Section 715 since the Department requires information that cannot be obtained from that

insured must provide notice of *all* claims to the insurer as soon as practicable after the claims first become known to the insured. *ACE American Ins. Co. v. Underwriters at Lloyds and Companies,* 939 A.2d 935, 938 n. 1 (Pa.Super.2007).

**17.** This statement appears on page two of the C–416: "Note: Please follow claim reporting guidelines, and note that if mandatory blocks are not completed, form will be returned." (C–416 at 2.)

bare writ to determine eligibility for coverage under Section 715.

The Department also argues that adopting Provider's position would impose a subjective standard that would make it difficult to determine when the 180–day reporting period begins. (Department's Br. at 17.) It asserts that the 180–day time limit is a bright-line rule intended to project predictability and efficiency into the system. (Department's Br. at 20, 21.) The Department notes that the legislature added the reporting period to remedy the problem of late and dilatory requests for coverage under Section 605 of Act 111, 40 P.S. § 1301.605, the predecessor to Section 715.[18] (Department's Br. at 20.) There was no time limit within which a provider had to request coverage under Section 605, so providers could wait months or years before requesting coverage. (Department's Br. at 20.) Because of this, the CAT fund lost the opportunity to investigate and settle claims early, and also lost predictability as to what its coverage obligations would be. (Department's Br. at 20.) Thus, the Department contends that Provider's position that the 180–day reporting period does not begin until he has sufficient notice of the nature of the claim is contrary to the purpose of the 180–day period.

However, requiring a provider to submit a bare writ of summons to the Department does not address the previous problems that the legislature intended to resolve. The Department cannot investigate and settle claims, or enjoy predictability as to its coverage obligations, until it knows that it will need to defend a claim asserted against a health care provider. Since receiving only a bare writ does not advance the Department's interests of predictability and efficiency, Provider's interpretation of Section 715 does not run counter to the purpose of the 180–day period. On the contrary, it promotes efficiency and predictability because the Department will be able to determine whether a claim qualifies for Section 715 coverage as soon as a provider requests Section 715 coverage. Furthermore, Provider's position will not result in a resurgence of problematically-late requests since it is not in contention that the Department must be notified within 180 days of Provider's receipt of a claim qualifying for Section 715 coverage. Thus, Section 715 still contains a cutoff to ensure that claims are timely reported so that the Department can adequately fulfill its obligations. Under the Department's interpretation, every provider would be required to report every bare writ received to the Department just in case it might be covered under Section 715. However, the legislature did not require such reporting and, in the absence of a clear requirement, such an interpretation would result in a trap for providers, catching both the provider and the injured individuals, which this legislation was also designed to protect.

Additionally, the Department argues that Provider *could* have investigated further to determine whether the claim qualified for Section 715 coverage. Although admitting that Provider was not required to, the Department alleges nonetheless that Provider could have checked his medical records to determine whether the writ qualifies. However, ascertaining whether a provider would be able to determine, from a check of the medical records, whether a potential claim would qualify under Section 715 would require the same case by case, subjective determination that

18. Section 605 was amended to require an insurer or provider to request coverage within 180 days of the date they received notice of the claim. Act of November 26, 1996, P.L. 776, No. 135, 40 P.S. § 1301.605.

the Department argues its interpretation of Section 715 forecloses. For example, in this case, while Provider's records appeared to contain the dates and notes of treatment, there is no evidence to suggest that Provider's records contained the information required to complete the C–416, such as the starting and ending dates of the alleged malpractice or the severity and nature of any resulting injuries.[19] This was information that Provider did receive when the Complaint was filed. Thus, the Department's argument that Provider could have investigated here does not prove that such investigation would have resulted in his determining that the Amended Summons was eligible for Section 715 coverage.

Finally, Provider argues that there is not substantial evidence to support the Commissioner's finding that Provider was aware that the Amended Summons was a claim for professional liability. In support of the Commissioner's finding, the Commissioner noted that the Amended Summons named Provider as a defendant in his professional capacity, and "named as a co-defendant his professional practice rather than lay individuals or entities." (A & O at 10.) The Commissioner also relied upon the fact that Provider reported the Kayser claim to his primary medical malpractice carrier one day after being served with the Amended Summons, and that there was no evidence that Provider reported the Kayser claim to a general liability insurer. (A & O at 10.) However, whether or not there is substantial evidence to support the Commissioner's findings is of no moment, because a provider's knowledge that a claim is for medical malpractice is only one of the three requirements a claim must meet to qualify for Section 715 coverage. In this case there is no evidence to suggest that Provider knew that the Amended Summons related to a claim for medical malpractice "made more than four years after the breach of contract or tort occurred...." 40 P.S. § 1303.715(a). Therefore, whether Provider knew that the Amended Summons was a claim for medical malpractice does not establish that Provider had notice that the Kayser claim qualified for Section 715 coverage.

 Accordingly, we hold that the 180–day reporting period under Section 715 does not begin to run until a health care provider receives notice that a claim asserted against him is eligible for Section 715 coverage, and that the bare writ of summons received here does not, by itself, provide such notice.[20]

19. The relevant dates in this case show that the four-year time frame required in Section 715 cannot be clearly ascertained from reviewing Kayser's medical records. Although the Summons was filed on May 24, 2004 and served on Provider on May 25, 2004, more than four years after Kayser's first visit to Provider on April 24, 2000, Provider did not perform the first surgery on Kayser until June 1, 2000, which was less than four years from the date of the Summons. The Amended Summons was filed on June 17, 2004 and served on June 22, 2004, which is the date the Department is using to start the 180–day notification period. In addition, there is no evidence that the Provider was aware of Kayser's medical condition following discharge from Provider's care.

20. We note that treating a bare writ of summons as notice of a Section 715 claim is not consistent with the purpose of the notice requirement in Section 715. "Notice is the most basic requirement of due process." *Pennsylvania Coal Mining Ass'n v. Insurance Department*, 471 Pa. 437, 452, 370 A.2d 685, 692 (1977). Parties are required to be given notice to "ensure[ ] that each party is provided adequate opportunity to prepare and thereafter properly advocate its position, ultimately exposing all relevant factors from which the finder of fact may make an informed judgment." *Choplosky v. Choplosky*, 400 Pa.Super. 590, 584 A.2d 340, 342 (1990). For notice to be valid, it must "be reasonably calculated to inform interested parties of the

For the foregoing reasons, the order of the Insurance Commissioner is reversed.

## ORDER

NOW, August 18, 2008, the order of the Insurance Commissioner of the Commonwealth of Pennsylvania in the above-captioned matter is hereby **REVERSED.**

## DISSENTING OPINION BY Judge PELLEGRINI.

There is no dispute that when Ernest E. Cope, M.D. (Provider) received a writ of summons from Morton Kayser and his wife, he knew it involved an action regarding his medical practice because he forwarded it to his med-mal carrier. There is also no dispute that under Section 715(a) of the Medical Care Availability and Reduction of Error (MCARE) Act,[1] a physician who participates in the Medical Professional Liability Catastrophe Loss Fund (Fund) must notify the Fund within 180 days of receiving notice of the claim, and failure to notify, even when there is no prejudice to the Fund, precludes being indemnified by the Fund. *Pennsylvania Medical Society Liability Insurance Company v. Medical Professional Liability Catastrophe Loss Fund,* 577 Pa. 87, 842 A.2d 379 (2004).[2] The only issue is whether a writ of summons is a "claim" that begins the 180–day requirement to notify the Fund. Because I believe it does, I respectfully dissent.

Provider first received a writ of summons on May 25, 2004, stating that he had been sued by his patient, Morton Kayser, but nothing more. On June 17, 2004, an amended writ of summons was filed adding Joanne Kayser as a plaintiff, but providing no facts or other details. Provider contacted Doctors' Insurance Reciprocal on June 23, 2004, regarding the matter. Approximately 19 months later, on January 27, 2006, the Kaysers filed a civil complaint against Provider, in fact, alleging medical malpractice by Morton Kayser and claims of loss of consortium by his wife. On February 13, 2006, Provider's insurance carrier sent the MCARE fund Department a C–416 Form requesting Section 715(a) coverage, i.e., medical malpractice coverage, for the claim filed by the Kaysers.

The Department denied Provider's request because it was not timely relying on the date of the first summons and Section 715(a) which requires that a provider file a claim within 180 days of the date on which the notice of the claim is first given to the provider. On appeal, the Commissioner affirmed. The majority now reverses because it interprets Section 715(a) to mean that the 180 days begins to run when the provider receives "a claim" which is more than a "bare summons." In other words, under the majority's rationale, if a provider receives a notice from an attorney that it intends to sue for medical malpractice for treatment of a patient, without further information, until the provider has the "who, what and where" it is under no obligation to inform the Fund of the claim.

---

pending action, and the information necessary to provide an opportunity to present objections." *Pennsylvania Coal Mining,* 471 Pa. at 452, 370 A.2d at 692–693. Under these principles, a bare writ of summons does not constitute valid notice of a Section 715 claim. Since a bare writ does not include information necessary to determine what type of claim it is, or whether it would qualify for Section 715 coverage, it really cannot be con-

sidered "notice of the claim ... first given to the [provider] ..." 40 P.S. § 1303.715(a).

**1.** Section 715 of the MCARE Act, Act of March 20, 2002, P.L. 154, *as amended,* 40 P.S. § 1301.715(a).

**2.** The Court was referring to the now repealed Section 605, 40 P.S. § 1301.605, which became Section 715.

I dissent because under the plain language of the Act, all that the Provider needs to know or have reason to know is that a med-mal claim is being brought against him, nothing more.

Section 715(a) of the Act provides, in relevant part, the following:

> (a) **General rule.**-*If a medical professional liability* **claim** *against a health care provider* who was required to participate in the Medical Professional Liability Catastrophe Loss Fund under section 701(d) of the act of October 15, 1975 (P.L. 390, No. 111), known as the Health Care Services Malpractice Act, is made more than four years after the breach of contract or tort occurred and if the **claim** is filed within the applicable statute of limitations, the claim shall be defended by the department *if the department received a written request for indemnity and defense within 180 days of the date on which notice of the* **claim** *is first given to the participating health care provider* or its insurer.

(Emphasis added.)

Under the language of this provision— IF A MEDICAL PROFESSIONAL LIABILITY CLAIM AGAINST A HEALTH CARE PROVIDER—all that the provider must know is that he is being sued for medical malpractice. In another case involving a Section 715 notice requirement, *Mercy Hospital/Mcare*, MM03–04–015 (2005),[3] the Insurance Commissioner correctly analyzed what is needed to be known for the 180 days to begin, stating:

> The statute starts the clock simply upon "notice of the claim" without requiring that the notice be in a particular form. The statute thus contemplates any form of notice of a claim against the provider, which might include a demand letter, writ of summons, formal complaint or any number of other mechanisms as opposed to the formality and detail of a complaint. Further, the statute does not qualify what the notice must contain. Had the statute started the clock upon "notice of a qualified claim," "notice that a claim qualifies under this section," or even "notice of such a claim" (similarly to how the statute triggers Mcare's defense obligation earlier in the section), an argument could be made that the statute at least is ambiguous as to what the notice must contain. However, "notice of the claim" is just that: notice of the claim. The writ of summons in the present case gave Mercy Hospital notice of the claim being asserted against it, and started the time in which it was required to report the claim to Mcare. Adjudication and Order at 14.

Id. at 10.

In this case, once he received the writ of summons, Provider realized that a med-mal claim was being made against him and forwarded the writ to his insurance carrier (probably expecting that it would notify MCARE.) He simply cannot contend that he did not have notice that a claim was being made for medical malpractice. Because there is no dispute that Provider knew that the writ of summons was a notice of a claim, the writ begins the running of the 180–day requirement, and because the Fund did not receive notice within that period, the request by Provider for Section 715 relief was not timely received.

Accordingly, I would affirm the Insurance Commissioner.

Judge SIMPSON joins in this dissenting opinion.

DISSENTING OPINION BY Judge SIMPSON.

I join in the dissenting opinion of Judge Pellegrini. I write separately to offer al-

---

**3.** *See* Insurance Commissioner's Adjudication at 9.

ternative analysis of the dispositive statutory language.

This case centers on an interpretation of Section 715(a) of the MCARE Act,[1] which requires the Medical Care Availability and Reduction of Error Fund (Fund) to act as a medical provider's primary insurer and provide first-dollar indemnity and costs of defense in certain limited situations. That Section states, as pertinent:

> If a medical professional liability claim against a health care provider is made more than four years after the breach of contract or tort occurred and if the claim is filed within the applicable statute of limitations, the claim shall be defended by the department if the department received a written request for indemnity and defense *within 180 days of the date on which notice of the claim is first given to the participating health care provider or its insurer.*

40 P.S. § 1303.715(a) (emphasis added).

Interpreting this provision, the majority holds Section 715(a)'s 180–day reporting requirement does not begin to run where a medical provider receives a writ of summons in a medical malpractice suit because a writ is insufficient to notify the provider he is eligible for Section 715(a) coverage. In reaching this result, the majority focus-es on the phrase "the claim" as used in Section 715(a). Because I believe the proper focus in interpreting Section 715(a) should be on the phrase when "*notice of the claim is first given,*" I respectfully dissent.

"Notice" is generally defined as "[l]egal notification required by law or agreement, or imparted by operation of law as a result of some fact ...." BLACK'S LAW DICTIONARY 1090 (8th ed. 2004). There are many different types of notice; indeed, Black's Law Dictionary enumerates over 20 types of notice.

Despite the various types of notice, Section 715(a) is very specific in terms of the type of notice that triggers the 180–day reporting period. That Section states the reporting period begins to run from "the date on which *notice* of the claim is *first* given" to a provider or its insurer. Thus, the plain language of Section 715(a) makes it clear that the legislature intended that the earliest or first notice to a provider or its insurer start the 180–day reporting period.[2]

The type of notice contemplated by Section 715(a) is properly characterized as inquiry notice. Black's Law Dictionary defines "inquiry notice" as "[n]otice attributed to a person when the information

---

**1.** The Medical Care Availability and Reduction of Error Act, Act of March 20, 2002, P.L. 154, *as amended,* 40 P.S. § 1303.715(a).

**2.** Further support for this interpretation of Section 715(a)'s notice provision is found in the legislative history to Section 715(a). More particularly, the predecessor to Section 715(a), former Section 605 of the Health Care Services Malpractice Act, Act of October 15, 1975, P.L. 290, *as amended,* 40 P.S. § 1301.605, repealed by the Act of March 20, 2002, P.L. 154, required the Fund to provide indemnification and defense costs "if the fund ... received a written request for indemnity and defense within 180 days of the date on which notice of the claim is given to the health care provider or his insurer." With the enactment of the MCARE Act in 2002, the legislature modified this statutory language by requiring the Fund to provide indemnification and defense costs where it receives "a written request ... within 180 days of the date on which notice of the claim is *first* given to the participating health care provider or its insurer ...." 40 P.S. § 1303.715(a) (emphasis added). As stated by the Insurance Commissioner here, "Adding the word 'first' to qualify 'notice of the claim' in the 2002 legislation even more strongly evidences that the clock starts at the earliest juncture." Insurance Commissioner's Adj. and Order of 11/5/07 at 11.

would lead an ordinarily prudent person to investigate the matter further ...." BLACK'S LAW DICTIONARY 1091 (8th ed. 2004). This is consistent with our Supreme Courts explanation: *"whatever puts a party upon inquiry amounts in judgment of law to notice,* provided the inquiry becomes a duty ... and would lead to the knowledge of the requisite fact by the exercise of ordinary diligence and understanding...." *Pa. Range Boiler Co. v. City of Phila.,* 344 Pa. 34, 38, 23 A.2d 723, 725 (1942) (emphasis added) (citation omitted).

Because Section 715(a) states the 180-day reporting period begins to run when notice of a claim is first given, I believe the type of notice contemplated in Section 715(a) is "inquiry notice." Therefore, I believe the 180-day reporting period begins to run when a provider first receives information that would lead a reasonable person to investigate the matter further.

A writ of summons is an official court document in a form prescribed by law which informs a defendant that named plaintiffs have commenced an action against him in a specified court. Pa. R.C.P. No. 1351. Because it is original process, special rules govern service of the writ. Pa. R.C.P. Nos. 400–430. The basic purpose of the rules for service of original process is "to assure that a defendant will receive actual notice of the commencement of an action against him and of his duty to defend." *Castel v. Mitchell,* 56 Pa. Cmwlth. 64, 423 A.2d 1375, 1377 (1981) (citation omitted).

In this case, the record adequately supports the Insurance Commissioners determination that Dr. Cope was served with the amended writ of summons in June 2004 and, in fact, knew it involved a claim for medical malpractice by a former patient. This knowledge is inferred from several circumstances, including his subsequent conduct: he forwarded the writ to his medical malpractice carrier.

Formal service upon a physician of a writ of summons from a former patient would certainly cause an ordinarily prudent provider to investigate the matter further. Therefore, as of the time he was served with original process, Dr. Cope was placed on "inquiry notice" sufficient to trigger the running of the 180–day reporting requirement.

Unfortunately, neither Dr. Cope nor his professional practice notified the Fund within 180 days of the date on which he first received notice of the claim against him by virtue of service of the writ; rather, Dr. Cope did not notify the Fund of the claim until February 2006, when he received the complaint. Because Dr. Cope did not notify the Fund within 180 days of when he was first upon inquiry of the claim, I would uphold the Insurance Commissioner's decision that denied his claim as untimely. *Cf. Greater New York Mut. Ins. Co. v. Farrauto,* 158 A.D.2d 514, 551 N.Y.S.2d 277 (1990) (in jurisdiction not requiring proof of insurer prejudice, where insurance policy directed insured to give notice of occurrence "as soon as practicable," delay in notifying insurer until receipt of complaint was not excusable where reasonable and prudent insured would have concluded a strong possibility existed that a liability claim would arise prior to actual filing of complaint).

Judge PELLEGRINI joins in this dissent.