**COMMUNITY HOSPITAL ALTERNATIVE FOR RISK TRANSFER, Petitioner**

v.

**Joel ARIO, in his official capacity as Insurance Commissioner of the Commonwealth of Pennsylvania, and the Pennsylvania Insurance Department, Medical Care Availability and Reduction of Error Fund ("Mcare"), Respondents.**

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 2012.

Decided Jan. 10, 2013.

Publication Ordered Jan. 17, 2013.

---

Joel C. Hopkins, Harrisburg, for petitioner.

Elit R. Felix, II, Philadelphia, for respondents.

BEFORE: FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Community Hospital Alternative for Risk Transfer (CHART) has filed a motion

for summary judgment with respect to CHART'S petition for review in the nature of a complaint for declaratory judgment and restitution, filed in this court's original jurisdiction against Joel Ario, in his official capacity as Insurance Commissioner of the Commonwealth of Pennsylvania, and the Pennsylvania Insurance Department, Medical Care Availability and Reduction of Error Fund (together, "Mcare"). We grant CHART'S motion for summary judgment.

On February 15, 2012, the parties filed a joint stipulation of facts (Stip.) and a three-volume joint appendix (J.A.) of exhibits (Ex.) to the motion for summary judgment. The relevant facts of this case, as agreed to by the parties, are as follows. On January 30, 2007, Vernetta Cooper and Dennis Cooper (together, Cooper) filed a writ of summons in their own right and on behalf of their minor daughter, Darlene Cooper, against Waynesboro Hospital (Hospital), in the Court of Common Pleas of Franklin County (trial court) with the title "Civil Action–Medical Professional Liability," which the Hospital received on February 1, 2007. (Stip. ¶ 27; J.A., Ex. H.) The Hospital's primary medical professional liability insurer is CHART. (Stip. ¶ 3.) On January 29, 2007, the Hospital sent a CHART Medical Malpractice Reporting Form to ProClaim America, Inc. (ProClaim), its third-party administrator of claims, regarding a "Potentially Compensable Event." (Stip. ¶¶ 6, 26; J.A., Ex. G.) ProClaim reported the matter to Mcare on a C–416 form dated May 1, 2007, which Mcare received on May 7, 2007. (Stip. ¶¶ 6, 38; J.A., Ex. S.) The C–416 form indicated that the claim was first reported to the Hospital on January 29, 2007.[1] (J.A., Ex. S.)

On June 7, 2007, Cooper filed a complaint in the trial court, alleging that the Hospital was liable for treatment rendered on January 5, 2003. (Stip. ¶ 42; J.A., Ex. W.) On August 17, 2007, ProClaim sent a revised C–416 form to Mcare, which Mcare received on August 20, 2007, requesting that Mcare assume the defense of the lawsuit and agree to provide primary liability coverage pursuant to section 715 of the Medical Care Availability and Reduction of Error Act (Act),[2] which governs claims made more than four years after the alleged tort. (Stip. ¶ 47; J.A., Ex. AA.) By letter dated September 11, 2007, Mcare denied section 715 coverage, asserting that it did not receive the request within 180 days of the date on which the Hospital and CHART had notice of the section 715 claim. (Stip. ¶ 48; J.A., Ex. CC.)

On November 21, 2007, CHART submitted a revised C–416 form for section 715 coverage, indicating that the lawsuit was filed in June 2007. (Stip. ¶ 51; J.A., Ex. FF.) On November 29, 2007, Mcare rejected the submission, referencing the September 11, 2007, determination. (Stip. ¶ 52; J.A., Ex. GG.) On December 21, 2007, CHART requested a formal administrative hearing on the rejection of section 715 status. (Stip. ¶ 53; J.A., Ex. HH.) By letter dated January 2, 2008, Mcare indicated that it stood by its refusal. (Stip. ¶ 54; J.A., Ex. II.)

CHART then filed its petition for review in this court's original jurisdiction seeking: (1) a declaration that CHART is entitled to

---

1. The form requested that Mcare provide excess coverage in connection with the Cooper matter. Mcare accepted the lawsuit for excess coverage on May 31, 2007.

2. Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. § 1303.715. Mcare will defend extended claims if Mcare receives a written request within 180 days of the date on which *notice* of the claim was first given to the participating health care provider or to its insurer. 40 P.S. § 1303.715(a).

section 715 coverage pursuant to *Cope v. Insurance Commissioner*, 955 A.2d 1043 (Pa.Cmwlth.2008); and (2) restitution for the costs CHART incurred in defending the lawsuit. Mcare filed a response with new matter, and CHART filed a reply.

CHART now files its motion for summary judgment, asserting that no disputed issues of material fact exist and that CHART is entitled to judgment under *Cope*.[3] Mcare filed a response, requesting that this court deny CHART'S motion for summary judgment and instead enter judgment of dismissal with prejudice in its favor. The parties submitted briefs in support of their positions. The court heard argument on November 19, 2012.

Under section 715 of the Act, Mcare will defend extended claims if Mcare receives a written request within 180 days of the date on which *notice* of the claim is first given to the participating health care provider or its insurer. 40 P.S. § 1303.715. In *Cope*, this court held that the 180–day reporting period does not begin to run until a health care provider receives notice that a claim asserted against him is eligible for coverage under section 715, and a bare writ of summons does not, by itself, provide such notice. 955 A.2d at 1050. In so holding, this court rejected the notion that a health care provider receiving a writ of summons was required to investigate to determine whether a claim qualified for coverage under section 715, stating that investigation would result only in a subjective determination as to whether the writ of summons involved a section 715 claim. *Id.* at 1051–52.

Recently, in *Yussen v. Medical Care Availability and Reduction of Error Fund*, —— Pa. ——, ——, 46 A.3d 685, 692 (2012),[4] our Supreme Court held "that, for purposes of Section 715, the mere filing of a praecipe for a writ of summons does not suffice to make a claim, at least in absence of some notice or demand communicated to those from whom damages are sought." The Court, however, did not address what constitutes a sufficient notice or demand. *Id.* at —— n. 7, 46 A.3d at 692 n. 7.

■ Here, the writ of summons, which Cooper filed with the trial court on January 30, 2007, and the Hospital received on February 1, 2007, indicated that Cooper would be filing a "Civil Action–Medical Professional Liability" lawsuit. (Stip. ¶ 27; J.A., Ex. H.) The writ did not provide the starting and ending dates of the alleged malpractice, the nature of the claims asserted, or a description of the alleged wrongful acts. CHART was not required to investigate under *Cope*. Although the Hospital made inquiries and requested Darlene Cooper's medical records, CHART did not conduct a formal investigation because no formal claim was made. (Stip. ¶ 30; J.A., Ex. K.) On January 29, 2007, the Hospital reported a "Potentially Compensable Event" to ProClaim. (Stip. ¶ 26; J.A., Ex. G.) ProClaim categorized the notification it received from the Hospital as "an 'Event' only." (*Id.*)

According to the parties' stipulations and joint exhibits, neither the Hospital nor CHART knew for certain the underlying basis for the writ of summons.[5] The Hos-

---

3. Summary judgment may be granted only in those cases "where the record clearly shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *P.J.S. v. Pennsylvania State Ethics Commission*, 555 Pa. 149, 153, 723 A.2d 174, 176 (1999).

4. The *Yussen* case was filed after the parties submitted the briefs in this matter.

5. The documents in the Joint Appendix confirm the lack of certainty. The attorney for the Hospital, in a March 7, 2007, email to ProClaim stated that the "case *appears* to pertain to events which occurred in January

pital treated Darlene Cooper on nine separate occasions between July 18, 2003, and December 7, 2006. (Stip.¶¶ 14–17, 20–24.) Prior to the complaint being filed, the Hospital did not know whether the claim involved other treatment provided to Darlene Cooper by the Hospital. Had Darlene Cooper's claim included allegations relating to any of those visits, the claim would have been disqualified from coverage under section 715. Without information identifying the starting and ending dates of the alleged malpractice, the nature of the claims asserted and a description of the alleged wrongful acts, the Hospital cannot be said to have "notice" prior to the filing of the complaint on June 7, 2007, in order to trigger the 180–day notification period.

Mcare nonetheless argues that once the Hospital received the writ of summons on February 1, 2007, the 180–day notification period began to run because, due to the Hospital's own investigation, it knew that the writ was related to the January 5, 2003, treatment of Darlene Cooper. Specifically, Mcare points to the deposition testimony of Jill Ann Keller, R.N., M.S., who stated that she "absolutely" knew that the writ was related.[6] (J.A., Ex. NN., Keller Dep., 70:7–10.) She believed that "there was only one instance that would have involved all these people [named in the writ] at the same time." (J.A., Ex. NN., Keller Dep., 100:18–21.) Keller concluded that "[t]here's nothing else that would have been remotely related to this." (J.A., Ex. NN., Keller Dep., 102:11–12.)

Keller subjectively believed, based on the information she had, that the writ was related to the events of January 5, 2003.

An individual's subjective belief, however, does not satisfy the objective standard discussed in *Cope* and would require case by case analysis. Keller's further testimony acknowledging that she was not aware of all information highlights the impracticality of a subjective standard. Specifically, Darlene Cooper visited the Hospital on nine occasions between July 18, 2003, and December 7, 2006. (Stip.¶¶ 14–17, 20–24.) Keller testified, however, that she did not know whether any of the treatments during that time related to the January 5, 2003, incident. (J.A., Ex. NN., Keller Dep., 97.)

■ The 180–day notice provision begins to run when "a health care provider receives notice that *a claim asserted against [it]* is eligible for Section 715 coverage." *Cope*, 955 A.2d at 1052 (emphasis added). The complaint contained the key information needed by the Hospital to determine section 715 eligibility. As stated in *Cope*, "[t]he C–416, which a provider must submit to the Department to request ... 715 coverage, requires information such as the starting and ending dates of the alleged malpractice, the nature of the treatment giving rise to the claim, the principal injury alleged and the severity of the injury." *Id.*, at 1050. Although Keller correctly surmised that the writ related to the events of January 5, 2003, the Hospital did not receive notice that a claim was asserted against it until Cooper filed the complaint on June 7, 2007. On that date, the Hospital had verifiable information as to the dates of the alleged malpractice and the nature and severity of any resulting injuries. Thus, it was the verified com-

---

of 2003." (Stip. ¶ 34 (emphasis added); J.A., Ex. O (emphasis added).)

**6.** Keller was the Director of the Emergency Room at the Hospital from 1996 to 2005, the Director of Quality Review and Risk Manage-

ment at the Hospital from 2005 to 2009 and thereafter, the Vice President of Nursing, Quality Review and Risk Management at the Hospital. (Stip.¶ 4.) On March 6, 2007, Keller was assigned as the investigator of the claim. (Stip.¶ 33.)

plaint, rather than Keller's subjective belief, that triggered the 180–day notice provision.

Next, we address Mcare's claims that CHART failed to exhaust administrative remedies and that *Cope* does not apply to this case. As to administrative remedies, Mcare claims that CHART was required to appeal Mcare's September 11, 2007, final determination rejecting section 715 status. Having failed to do so, Mcare claims that CHART allowed its rights to expire. We disagree.

In *Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association,* 603 Pa. 452, 481, 985 A.2d 678, 697 (2009), the Supreme Court stated that "the Commonwealth Court has original jurisdiction over claims against the MCARE Fund premised on the MCARE Fund's statutory liability."

> [T]he MCARE Act . . . does not contain any specific provision for resolving coverage disputes. . . . [B]ecause the MCARE Fund cannot point to any statutorily prescribed procedure for Fletcher to follow, we reject the MCARE Fund's contention that Fletcher was required on this basis to exhaust administrative remedies before bringing her action in the original jurisdiction of the Commonwealth Court.

*Id.* at 476, 985 A.2d at 693. We agree with CHART that in accordance with *Fletcher,* it was not required to appeal the September 11, 2007, letter.

Mcare also claims that *Cope,* which this court decided on August 18, 2008, does not apply to this case. Because CHART did not appeal the September 11, 2007, letter, Mcare argues that CHART did not have a case pending when this court decided *Cope.* As previously stated, however, CHART was not required to exhaust administrative remedies because this court has original jurisdiction over claims against Mcare based on Mcare's statutory liability.

Finally, Mcare argues that its C–416 Claim Reporting Guidelines (Guidelines), available on its website and in effect at the time of the Cooper claim, required CHART, in order to toll the 180–day time period, to inform Mcare of "the writ of summons, complaint, demand letter or details concerning the claim." (J.A., Ex. QQ.) Although Mcare's Guidelines may suggest otherwise, the statute, which governs, does not place such a requirement on a health care provider or insurer.

Accordingly, we grant CHART'S motion for summary judgment.

### ORDER

AND NOW, this 10th day of January, 2013, we grant the motion for summary judgment filed by the Community Hospital Alternative for Risk Transfer.