46 A.3d 685

**Phillip S. YUSSEN, M.D., Appellant**

v.

**MEDICAL CARE AVAILABILITY AND REDUCTION OF ERROR FUND, Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 29, 2011.

Decided May 30, 2012.

Stephanie Lynn Hersperger, Paul Richard Walker, Thomas, Thomas & Hafer, L.L.P., Harrisburg, for Phillip S. Yussen.

Amy Griffith Daubert, Harrisburg, Tawny Kay Mummah, Medical Care Availability & Reduction of Error Fund, Cindy Elaine Sheaffer, Enola, for Medical Care Availability & Reduction of Error Fund.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice SAYLOR.

At issue in this direct appeal is a statutory prerequisite to the obligation of the Insurance Department to defend certain medical professional liability actions asserted against health care providers, and to the requirement for payment of claims asserted in such actions from the Medical Care Availability and Reduction of Error Fund. Specifically, resolution of the appeal turns on when, under the governing statute, a "claim" is "made" outside a specified four-year time period.

Appellee, the Commonwealth of Pennsylvania, Medical Care Availability and Reduction of Error ("MCARE") Fund, is a special fund established within the State Treasury and administered by the Insurance Department per the MCARE Act,[1] embodying Pennsylvania's framework governing professional liability insurance for health care providers. *See generally Fletcher v. Pa. Prop. & Cas. Ins. Guar. Ass'n*, 603 Pa. 452, 472–75, 985 A.2d 678, 691–92 (2009). Appellant, Phillip S. Yussen, M.D., is a licensed physician and participating health care provider, per the statutory scheme.

Pursuant to the MCARE Act, surcharges are collected from Pennsylvania health care providers, which are reposited in the Fund and used to supplement the primary (or basic) professional liability coverage required under the enactment. *See generally* 40 P.S. §§ 1303.711–1303.712. Ordinarily, private carriers serve in the role of primary insurers with initial indemnity and defense obligations, *see id.* § 1303.711, and the Fund serves, in essence, to provide a layer of excess coverage, *see id.* § 1303.712. Under Section 715 of the enactment, however, where more than four years have passed between the events giving rise to liability on the part of a health care provider and the making of a claim against it, the Insurance Department and the Fund may be required also to assume central obligations of the primary insurer. *See id.* § 1303.715. The duties and liabilities of the Department and the Fund, in

1. Act of March 20, 2002, P.L. 154, No. 13 (as amended 40 P.S. §§ 1303.101–1303.1115).

this respect, include the provision of initial indemnification and funding the defense of the underlying civil action, which the parties term "first-dollar indemnity and cost of defense" or "Section 715 status." [2]

The material prescription of Section 715 is as follows:

(a) General Rule.—If a medical professional liability claim ... is made more than four years after the breach of contract or tort occurred ... the claim shall be defended by the department....

(b) Payment.—If a health care provider is found liable for a claim defended by the department in accordance with subsection (a), the claim shall be paid by the fund.

*Id.* § 1303.715(a)-(b). The apparent purpose underlying these directives is to afford private insurance companies providing the basic coverage greater certainty in terms of fixing reserves against possible claims, particularly in light of Pennsylvania's discovery rule exception to statutory periods of limitations pertaining to the commencement of civil actions. *See Pa. Med. Soc'y Liab. Ins. Co. v. Commonwealth,* 577 Pa. 87, 90 n. 2, 842 A.2d 379, 380 n. 2 (2004)

On June 4, 2007, Joanna Ziv filed a praecipe for a writ of summons naming Appellant and other medical providers as defendants. A complaint was filed on August 2, 2007, alleging medical negligence last occurring on July 7, 2003. Appellant's primary insurer, Pennsylvania Healthcare Providers Insurance Exchange ("PaHPIX"), requested that the claim be accorded Section 715 status by the Insurance Department. The Department denied such request, however, on the basis that the claim had been made less than four years after the alleged malpractice. *See* 40 P.S. § 1303.715(a). In this regard, the Department reasoned that the date of alleged mal-

---

**2.** Such duties and liabilities are subject to other conditions which are not directly relevant to the question presented here, including: the health care provider's mandatory participation in the predecessor scheme to the MCARE Act; the occurrence of the asserted breach or tort on or before December 31, 2005; the pertinent claim's qualification as a "medical professional liability claim"; the filing of the claim within the applicable period of limitations; and the provision of timely notice to the Department. *See* 40 P.S. § 1303.714(a), (d).

practice was July 7, 2003, and the claim was first "made" upon the filing of the praecipe for a writ of summons on June 4, 2007. Appellant initially challenged this determination in the administrative setting, and a hearing ensued.

At the hearing, Appellant presented as a witness a senior claims examiner for PaHPIX, who attested to the above facts (most of which also were the subject of a stipulation). The claims examiner added that Appellant and PaHPIX first received notice of the writ on July 23, 2007, over four years after the asserted medical negligence. According to his testimony, this date is significant to Appellant's primary coverage, since the policy was written on a claims-made basis, pursuant to which coverage is provided for claims received by an insured and reported to the insurer during the policy period. *See* N.T., May 29, 2008, at 17, 31; Exhibit 2 to Joint Stipulation of Facts, at 9 (reflecting the policy's definition of a claim, subsuming "[w]ritten notification received by an insured of a suit or receipt by an insured of any other request for compensation to which this insurance applies made by or on behalf of an injured party to which this insurance applies").

While the matter was pending before the Insurance Commissioner, this Court issued a decision in *Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association,* 603 Pa. 452, 985 A.2d 678 (2009), holding that original jurisdiction over claims asserted against the MCARE Fund premised on the requirements of the MCARE Act lies in the Commonwealth Court. *See id.* at 481, 985 A.2d at 697. Per *Fletcher,* the case was transferred there, and the court appointed a hearing examiner.

Before the examiner, Appellant argued that, consistent with the policy definition of a "claim," the date on which a claim is made for purposes of Section 715 cannot precede the date on which notice is provided to the insured. Appellee, on the other hand, contended that a claim is made when it is first asserted, instituted, or comes into existence—including upon the tender of a demand or the commencement of a legal action—and that notice to the insured or insurer is not a necessary prerequisite. In this regard, Appellee highlighted

that Section 715 does require "notice" of the claim to trigger the provider's obligation to report the claim to the Fund within 180 days, but the statute does not contain such an express notice component in delineating the four-year requirement. *See* 40 P.S. § 1303.715(a).

The hearing examiner recommended reversal of the denial of Section 715 status, reasoning, in the first instance, that the governing statutory language is ambiguous. Observing that the statute provides no definition for either the term "claim" or "made," the examiner explained:

> In one sense, a claim is initiated (if it does not exist already) when a legal action is commenced. The section itself refers to the claim being filed within the statute of limitations, implying that a claim is made or previously exists when it is filed. In another sense, a claim is not made unless something is claimed. Without communicating a demand for something, nothing is claimed.... The plain language of Section 715 does not answer which is the operative event for determining when a claim is made.

Proposed Decision in *Yussen v. MCARE Fund,* No. 400 M.D.2010, slip op. at 10–11 (Pa.Cmwlth., Jan. 4, 2011).[3]

Given the noted ambiguity, the hearing examiner referenced various tools of statutory construction, including review of the object to be attained, the statute's history, the consequences of various interpretations, and administrative interpretations. *See* 1 Pa.C.S. § 1921(c)(4), (5), (6), (8). In terms of the statute's purpose—that is, to afford insurance companies greater certainty in fixing reserves—the examiner highlighted that, absent notice, an insurer simply cannot achieve the intended certainty. *See* Proposed Decision in *Yussen,* No. 400 M.D.2010, *slip op.* at 12 ("If a filed but unserved writ of summons constitutes 'making a claim,' the carrier is unable to adjust its reserves accordingly.").

**3.** Nevertheless, the hearing examiner found that the terms "claim" and "made," in common usage, indicate a communicated demand. *See id.* at 13 ("In common usage, a filed but uncommunicated writ is no more a demand or claim than the praecipe in the attorney's office before it is filed."). Indeed, he noted, a demand letter submitted to the provider can satisfy the requirement for purposes of Section 715. *See id.*

As to the history, the hearing examiner recounted that that the first-dollar and costs of defense obligation originally was tied to whether a claim was "filed" after the four-year period. *See* 40 P.S. § 1301.605 (repealed 2002). He reasoned that removal of such filing requirement evidenced a legislative intent that communication of the claim to the provider should control. *See* Proposed Decision in *Yussen*, No. 400 M.D.2010, *slip op.* at 13–14 ("Rewriting the section less than a year after its enactment to remove the filing requirement evidences an intent to make communication of the claim the operative event rather than filing.").

On the subject of administrative interpretations, the hearing examiner discussed an adjudication by the Insurance Commissioner in *In re: Kimberly S. Harnist, M.D.*, No. MM06–02–014, *slip op.* (Pa.Ins.Dep't, Oct. 10, 2006). There, the Commissioner determined that a claim was made via the filing of a writ of summons, assuming proper service was effectuated. *See id.* at 8–9. The hearing examiner found such interpretation to be consistent with his own position that a claim is made when it is communicated to the provider or carrier. *See* Proposed Decision in *Yussen*, No. 400 M.D.2010, *slip op.* at 14–15.[4]

The Commonwealth Court sustained exceptions to the hearing examiner's recommendation lodged by Appellee and entered judgment in its favor. *See Yussen v. MCARE Fund*, 17 A.3d 422 (Pa.Cmwlth.2011). At the outset, the court differed with the hearing examiner's reading of the *Harnist* adjudication, indicating that "the Insurance Commissioner held in no uncertain terms that the date a writ of summons is filed, is the date a claim is 'made.' " *Id.* at 423; *accord supra* note 4. The court then summarily expressed its agreement with such

4. In this respect, the hearing examiner appears to have been relying on a portion of the opinion in *Harnist* in which the Insurance Commissioner discussed the effect of service. *See Harnist*, No. MM06–02–014, *slip op.* at 8–9 ("Under certain circumstances, if a writ is not served, the claim becomes a nullity."). As Appellee observes, however, the main purport of *Harnist* is that the date a claim is made via writ under Section 715 is the date of filing of the praecipe, assuming that the writ does not otherwise become invalid. *See id.*

position. *See id.* Further, it undertook to distinguish its prior decision in *Cope v. Insurance Commissioner*, 955 A.2d 1043 (Pa.Cmwlth.2008) (holding that a mere writ does not serve as notice to a health care provider that a claim might qualify for Section 715 coverage, for purposes of Section 715's requirement of notice to the Department, *see supra* note 2). The Commonwealth Court explained that *Cope* did not address the date on which a claim is made for purposes of determining Section 715 status in the first instance; rather, the decision concerned Section 715(a)'s distinct requirement of notice to the Department. *See Yussen,* 17 A.3d at 424.

Presently, Appellant maintains that a claim should be deemed made for purposes of Section 715 only when a demand for something is communicated to an insured health care provider. Appellant agrees with the hearing examiner that the statute is ambiguous in the first instance, but he asserts that recognition of a notice requirement is supported by: the common and approved usage of the statutory terms; the legislative objective of Section 715; the history of that section; the purpose and effect of service of process; and the Commonwealth Court's prior decision in *Cope.* Appellant also distinguishes *Harnist* on the basis that, although the Insurance Commissioner indicated that the relevant claim was made upon the filing of the writ, she additionally had found that service also occurred within the salient four-year period. *See Harnist,* No. MM06–02–014, *slip op.* at 8–9. In any event, Appellant criticizes the Commonwealth Court for purportedly according deference to the Insurance Commissioner, inasmuch as *Harnist* was issued in the Commissioner's adjudicative capacity. *See Cope,* 955 A.2d at 1049 n. 14 (explaining that the deferential review of an agency's interpretation of its statute in its rulemaking capacity does not extend to its adjudicative functions).

Appellant further observes that the MCARE Act draws a distinction between an action and a claim, *see* 40 P.S. § 1303.103 (separately defining "Medical professional liability action" and "Medical professional liability claim"), which he finds to be inconsistent with the notion that the un-noticed

commencement of an action (via writ or otherwise) constitutes the making of a claim. Finally, Appellant regards the Commonwealth Court's present decision as inconsistent with its prior one in *Cope*, where the court indicated that "[r]eceiving a bare writ of summons ... does not by itself provide notice that a claim is eligible for Section 715 coverage because it does not contain information that would enable a health care provider to make that determination." *Cope*, 955 A.2d at 1050. *See* Reply Brief for Appellant at 2 ("When read in context, the Commonwealth Court's decision in *Cope* rejects the concept that a bare writ of summons was the 'claim' for purposes of [Section 715(a) ].").

Appellee, on the other hand, believes the statutory language is clear and that a claim is made whenever it first comes into existence, including upon the filing of a praecipe for a writ of summons. Appellee posits that Appellant is asking this Court to ignore the plain language and judicially engraft a notice requirement onto the four-year boundary within Section 715. Appellee explains that the Legislature provided three separate conditions for first-dollar coverage under Section 715: when a claim is *made;* when the claim is *filed;* and when there is *notice* of the claim. The express notice provision, Appellee emphasizes, applies only to the 180–day requirement for a provider to request first-dollar coverage from the Fund. *See generally Cherry v. PHEAA*, 153 Pa.Cmwlth. 210, 620 A.2d 687, 690–91 (1993) ("[W]here the legislature includes specific language in one section of a statute and excludes it from another, it should not be implied where excluded."), *aff'd*, 537 Pa. 186, 642 A.2d 463 (1994). Appellee asserts that the filing of a praecipe for a writ of summons is an act of legal significance; it is the initial process in which a claim is first asserted and comes into existence.[5] Thus, Appellee argues, the date on which a praecipe is filed should constitute the date on which a claim is made for purposes of Section 715 (in the

---

5. In this regard, Appellee references *Lamp v. Heyman*, 469 Pa. 465, 366 A.2d 882 (1976), which discusses the "commencement of an action" upon the filing of a praecipe, *id.* at 473–74, 366 A.2d at 886–87, a concept as to which there are no differences asserted in the present appeal.

absence of some other form in which the claim may have been made, such as via a demand letter).

Appellee also couches the purpose of the four-year requirement somewhat abstractly, as being to "identify the universe of cases that may be entitled to [MCARE]'s first dollar coverage." Brief for Appellee at 9. According to Appellee, all relevant notice purposes are achieved via Section 715's requirement of notice to the Department. Brief for Appellee at 15 (asserting that Appellant "ignores the fact that there is a notice provision in the 180–day requirement, so the purpose and effect of service of process are achieved by Section 715."). Appellee also posits that the amendment of the statutory language from a claim being "filed" to a claim being "made" did not, as Appellant argues, impose a communication or notice requirement. Instead, Appellee asserts, this only reflects a legislative recognition that a claim can be made by means other than the commencement of a lawsuit (including via demand letter).

As to *Cope*, Appellee maintains that the case only addressed the requirement of notice to the Department and has little or no applicability to the four-year requirement. In any event, Appellee explains that *Cope* indirectly recognized that the date of filing of a praecipe for a writ of summons is the date upon which a claim is made. *See Cope*, 955 A.2d at 1050 ("In order to determine whether a writ is for a claim under Section 715, a health care provider would need to know whether the claim is for medical professional liability and *whether it was filed more than four years after the tort occurred.*" (emphasis added)). Finally, with reference to the Insurance Commissioner's adjudication in *Harnist*, Appellee explains that the Commonwealth Court did not "adopt" the adjudication, but rather, merely expressed agreement with its reasoning.

The issue of statutory construction presented by the parties' arguments is a legal one, over which our review is plenary. *See Oliver v. City of Pittsburgh*, 608 Pa. 386, 393, 11 A.3d 960, 964 (2011).

Initially, we agree with Appellant that the terms "claim" and "made," as used in Section 715, are ambiguous. In the first instance, the concept of a claim being made, considered in very broad terms, may indicate the claim's mere coming into existence, as Appellee asserts. On the other hand, as used in the litigation setting, the term often connotes conveyance of a demand to those intended to respond in damages. Indeed, the conception of the making of a claim has attained a particular meaning (or set of meanings) in the context of claims-made policies in the insurance setting, of which the General Assembly is well aware. *See, e.g.,* 40 P.S. § 1303.702 (defining "Claims made" as "[m]edical professional liability insurance that insures those claims made or reported during a period which is insured and excludes coverage for a claim reported subsequent to the period even if the claim resulted from an occurrence during the period which was insured"). Moreover, consistent with the primary liability policy maintained by Appellant, most claims-made policies incorporate some conception of notice to at least the insured. *See* Allan D. Windt, INSURANCE CLAIMS AND DISPUTES 5TH § 11.5 (2012) ("[I]n general, a claim is not made against an insured unless the insured has received notice of its existence."); *accord Wolfson v. MCARE Fund,* 39 A.3d 551, 555–56 (Pa.Cmwlth.2012) (explaining that a claim was defined under a particular primary liability policy as "a demand received by an [i]nsured").

■ As we find the salient terms of Section 715 to be ambiguous, we follow the approach of the hearing examiner in employing principles of statutory construction, in particular, the occasion and necessity for the statute, the object to be attained, and the consequences of the particular interpretations. *See* 1 Pa.C.S. § 1921(c)(1), (4), (6). As to Section 715's purpose, we find that Appellee views this too abstractly in its indication that the statute merely sets out criteria by which to determine which claims are, and are not, eligible for first-dollar indemnity and costs of defense treatment. As Appellant stresses, there is an underlying reason why the Legislature has drawn this distinction among claims, which we agree is to afford insurers greater certainty in calculating reserves.

*Accord Pa. Med. Soc'y Liab. Ins. Co.*, 577 Pa. at 90 n. 2, 842 A.2d at 380 n. 2. Consistent with Appellant's arguments, we believe that a construction encompassing some notice to the insured, at the very least, is most consonant with such purpose.

Notably, under the broadest plain-meaning approach to the making of a claim, a mere oral pronouncement in the abstract would qualify. This, obviously, could not have been the intent of the General Assembly, and Appellee itself appears to recognize the unreasonableness of such a position vis-à-vis Section 715. Appellee, however, does not provide a particular limiting principle, other than by way of the suggestion that, in the absence of notice (such as by way of a demand letter), the commencement of a civil action is another avenue for making a claim for Section 715 purposes. In our view, however, consistent with the approach specified in the claims-made primary liability policy maintained by Dr. Yussen and in many other such policies, the concept of communication or notice supplies the most rational limiting principle in the Section 715 context as well. *Accord supra* note 3.[6]

We hold that, for purposes of Section 715, the mere filing of a praecipe for a writ of summons does not suffice to make a claim, at least in absence of some notice or demand communicated to those from whom damages are sought.[7]

The order of the Commonwealth Court is reversed, and the matter is remanded for entry of judgment in Appellant's favor.

6. We do note our agreement, however, with Appellee's arguments that the amendment of the substantive content of Section 715 to remove the filing requirement is not determinative in this regard, and that the analysis in *Cope* is of limited relevance given that the decision is more concerned with the requirement of notice to the Department. We also acknowledge that Appellee's position does draw support from *Harnist*, albeit we differ with the Insurance Commissioner's construction, which, as noted, arose in an adjudicative context.

7. Resolution of this appeal does not require us to address what constitutes a sufficient notice or demand, since there is no evidence that any notice or demand was made of Appellant within the relevant four-year period.

Justice ORIE MELVIN did not participate in the decision of this case.

Justices BAER, TODD and McCAFFERY join the opinion.

Justice EAKIN files a dissenting opinion in which Chief Justice CASTILLE joins.

Justice EAKIN, dissenting.

I disagree with the majority that the filing of a praecipe for a writ of summons, without service thereof upon the parties, is insufficient to comprise the making of a claim for purposes of § 715 of the MCARE Act.

A medical professional liability claim shall be defended by the Insurance Department and paid by the MCARE fund if: (1) the claim is made more than four years after the breach of contract or tort occurred; (2) the claim is filed within the applicable statute of limitations; and (3) the department received a written request for indemnity and defense within 180 days of the date on which notice of the claim is first given to the participating health care provider or its insurer. 40 P.S. § 1303.715(a). Therefore, the legislature obviously recognized a difference between three events: a claim being *made*, the claim being *filed*, and *giving notice* of the claim. I find this distinction significant, as only the third of the requirements speaks to notice, indicating fairly clearly that notice is not part of the first two. There is a notice requirement triggering the date for a request for indemnity, but no such requirement when considering the time a claim was "made" or "filed." The statute recognizes the distinction between making or filing a claim and providing notice thereof through service on the other party. Because it does so, and because filing and providing notice of that filing are legally disparate notions, I cannot agree that the statute intended a notice requirement here.

The present action is not between a health care provider and an injured patient—it is between the provider's insurer and the Insurance Department. We are concerned only with who shall defend and indemnify—questions of service or notice

are concomitantly different than they might otherwise be, were we concerned with the merits of the underlying claim itself.

The filing of a praecipe for a writ of summons is sufficient to commence a civil action. Pa.R.C.P. 1007(1). If it is enough to start a lawsuit, I see no reason to hold it cannot constitute a claim made and filed for purposes of determining coverage under MCARE. Accordingly, I respectfully dissent.

Chief Justice CASTILLE joins this dissenting opinion.