# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Montgomery Hospital and Medical
Center,
                    Petitioner

          v.

Bureau of Medical Care Availability
and Reduction of Error Fund
(MCARE Fund),
                    Respondent

:
:
:
:
:
:
:    No. 571 M.D. 2012
:    Submitted: October 12, 2018
:
:
:
:
:

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE ELLEN CEISLER, Judge

**OPINION**
**BY JUDGE SIMPSON**              **FILED: January 4, 2019**

Before this Court in our original jurisdiction is a motion for summary relief (Hospital Motion) filed by Petitioner, Montgomery Hospital and Medical Center (Hospital). Hospital seeks coverage from Respondent, the Bureau of Medical Care Availability and Reduction of Error Fund (MCARE Fund) of Hospital's defense expenses in underlying third-party medical malpractice litigation (Third-Party Action). For the reasons explained below, we deny the Hospital Motion.[1]

---

[1] After the MCARE Fund filed its brief, Hospital filed a reply brief, incorrectly designated as a sur-reply brief. The MCARE Fund filed an application to strike the reply brief as untimely. By order dated September 10, 2018, this Court (Brobson, J.) directed that the application to strike would be considered together with the merits of the Hospital Motion. We do not condone untimely filings. However, the content of Hospital's reply brief had no influence on our decision on the Hospital Motion. Therefore, the application to strike is dismissed as moot.

## I. Background
### A. Underlying Third-Party Action

In July 2002, a patient (Third-Party Plaintiff) underwent surgery at Hospital. The surgeon (Surgeon) had staff privileges at Hospital and was a member of a separate professional corporation (Surgical Group).

Over the next eight years, Third-Party Plaintiff complained of continuing pain and swelling at the surgical site. Third-Party Plaintiff underwent a series of investigatory procedures, including imaging studies *at Hospital* performed by two different radiologists (Radiologists). Radiologists were associated with a third-party practice group with which Hospital contracted for physician services.

In October 2010, Surgeon performed exploratory surgery on Third-Party Plaintiff. At that time, he discovered and removed a surgical sponge left behind during his prior surgery eight years earlier.

In September 2011, Third-Party Plaintiff[2] filed the Third-Party Action against Hospital, Surgeon, Surgical Group, and Radiologists.[3] Third-Party Plaintiff alleged that Surgeon and Radiologists were agents of Hospital. In Count III of the amended complaint, Third-Party Plaintiff alleged negligence on the part of

---

[2] Third-Party Plaintiff's spouse was also a named plaintiff in the civil action. For convenience, this opinion refers solely to Third-Party Plaintiff.

[3] Ultimately, the trial court in the underlying civil litigation (Third-Party Action) granted summary judgment in favor of all defendants, based on a general release executed by Third-Party Plaintiff in other litigation. See Montgomery Hosp. & Med. Ctr. v. Bureau of Med. Care Availability & Reduction of Error Fund (Pa. Cmwlth., No. 571 M.D. 2012, filed March 24, 2014) (Leadbetter, J.) (this Court may take judicial notice of the trial court's opinion and order in the Third-Party Action, granting summary judgment in favor of Hospital in the Third-Party Action).

Radiologists as Hospital's actual or ostensible agents. In Count IV, Third-Party Plaintiff alleged negligence by Hospital acting through its agents and employees, including Surgeon, Radiologists, and an operating room nurse and technician, not named as defendants in the Third-Party Action, who purportedly failed to perform an accurate sponge count during the 2002 surgery. Count IV also included an averment of failure to properly train and supervise surgical personnel. In Count V, Third-Party Plaintiff alleged that Hospital failed to develop and enforce a climate of safety in relation to its surgical protocols and procedures. More specifically, Count V alleged that Hospital failed to implement adequate requirements for accurate sponge counts during surgeries.

In its answer to the amended complaint in the Third-Party Action, Hospital admitted it employed the operating nurse and technician. Hospital denied that Surgeon and Radiologists were its agents or employees. However, Hospital acknowledged it contracted for physician services with a third-party practice group, with which Radiologists were associated.

### B. Petition for Review of MCARE Fund Determination
### 1. MCARE Fund Coverage

The MCARE Fund generally functions similarly to a secondary insurer. Pursuant to Section 711 of the Medical Care Availability and Reduction of Error MCARE) Act (MCARE Act),[4] the MCARE Fund provides excess coverage to medical providers for civil damages exceeding the providers' primary liability insurance coverage. See 40 P.S. §1303.711.

---

[4] Act of March 20, 2002, P.L. 154, as amended, 40 P.S. §§1303.101-1303.910 (MCARE Act).

3

However, under Section 715 of the MCARE Act, 40 P.S. §1303.715 (Section 715),[5] the MCARE Fund acts as a primary insurer, providing legal defense and first-dollar indemnity to medical providers for qualifying third-party claims asserted *more* than four years after an alleged negligent act, but still within the applicable statute of limitations.[6] Relevant here, the MCARE Act deems a third-party claim to have been brought *less* than four years after the negligent act where the defendant medical provider rendered "multiple treatments or consultations" to the third-party plaintiff patient within the four-year period. 40 P.S. §1303.715(a). Claims falling into this latter category are not covered by Section 715 status.

## 2. Hospital's Request for Coverage of Defense Costs

In October 2011,[7] Hospital requested Section 715 coverage of its Third-Party Action defense costs because Third-Party Plaintiff brought her claims more than four years after the alleged negligence giving rise to those claims. However, in August 2012, the MCARE Fund denied Section 715 status because Radiologists, alleged by Third-Party Plaintiff to be agents of Hospital, provided interpretations of

---

[5] Section 715 of the MCARE Act (Section 715) contains a provision, not applicable here, requiring all medical professional liability insurance policies issued on or after January 1, 2006, to provide indemnity and defense for claims relating to occurrences four or more years before the claims are made. 40 P.S. §1303.715(d).

[6] Section 513 of the MCARE Act also contains a repose provision, barring coverage under the MCARE Fund for any third-party claim brought more than seven years after the alleged negligent acts at issue. 40 P.S. §1303.513(a). However, the repose provision is inapplicable to coverage for claims arising from items allegedly left behind inside a patient during surgery, the claim that gave rise to the Third-Party Action here. 40 P.S. §1303.513(b).

[7] Section 715 of the MCARE Act requires a medical provider to submit a coverage request within 180 days after receiving notice of a third-party medical malpractice claim. 40 P.S. §1303.715(a). The record here does not indicate any dispute concerning the timeliness of Hospital's request for coverage.

4

imaging studies of Third-Party Plaintiff in 2007 through 2010, the four-year period immediately preceding commencement of the Third-Party Action.

In September 2012, Hospital filed a petition for review in this Court's original jurisdiction. Hospital argued Radiologists were not its actual agents or employees and, even assuming they were its ostensible agents, that status still would not allow the MCARE Fund to attribute Radiologists' services to Hospital for purposes of triggering the MCARE Act's four-year treatment period under Section 715.

In 2014, the MCARE Fund filed a motion seeking summary relief (MCARE Fund Motion). The MCARE Fund urged this Court to apply general principles of insurance law and asserted that the averments of the amended complaint in the Third-Party Action controlled the duty to provide a defense under Section 715. In a single-judge opinion by Senior Judge J. Wesley Oler, Jr., this Court denied the MCARE Fund Motion, concluding the record did not clearly demonstrate that there was no genuine issue of material fact concerning Radiologists' agent status.

After the parties engaged in discovery, Hospital filed the Hospital Motion. Hospital seeks a declaration that it is entitled to Section 715 status and that the MCARE Fund must pay Hospital's defense costs for the Third-Party Action.

## II. Issues

The sole basis for the MCARE Fund's denial of Hospital's request for Section 715 status was Radiologists' services to Third-Party Plaintiff during the four-year period before filing of the Third-Party Action. In support of summary relief,[8] Hospital contends there is no genuine issue of material fact that Radiologists were independent contractors and not Hospital employees. Accordingly, Radiologists' services to Third-Party Plaintiff in the four-year period preceding the Third-Party Action cannot be attributed to Hospital for purposes of denying Section 715 status. In a related argument, Hospital argues Radiologists were also not its actual agents or servants. Thus, Hospital contends it cannot be held vicariously liable for Radiologists' acts.

Hospital further contends that any claim by Third-Party Plaintiff that Radiologists were ostensible agents of Hospital is irrelevant to Section 715 status. Hospital asserts that the legal doctrine of liability for conduct of ostensible agents applies only to liability to patients and cannot be used by the MCARE Fund as a shield from its responsibility to provide defense costs under Section 715.

---

[8] "[S]ummary judgment may be granted only where the record demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Aria Health v. Med. Care Availability & Reduction of Error Fund, 88 A.3d 336, 340 (Pa. Cmwlth. 2014) (citing Summers v. Certainteed Corp., 997 A.2d 1152 (Pa. 2010)). As the Petitioner, Hospital has the burden to demonstrate that under the undisputed facts, it satisfies all requirements to trigger coverage of defense costs under Section 715 of the MCARE Act. Id.

6

## III. Discussion

Section 715, Extended Claims, provides:

**(a) General Rule.—** If a medical professional liability claim against a health care provider who was required to participate in the Medical Professional Liability Catastrophe Loss Fund under section 701(d) of the act of October 15, 1975 (P.L. 390, No. 111), known as the Health Care Services Malpractice Act, is made more than four years after the breach of contract or tort occurred and if the claim is filed within the applicable statute of limitations, the claim shall be defended by the department if the department received a written request for indemnity and defense within 180 days of the date on which notice of the claim is first given to the participating health care provider or its insurer. Where multiple treatments or consultations took place less than four years before the date on which the health care provider or its insurer received notice of the claim, the claim shall be deemed for purposes of this section to have occurred less than four years prior to the date of notice and shall be defended by the insurer in accordance with this chapter.

**(b) Payment.—** If a health care provider is found liable for a claim defended by the department in accordance with subsection (a), the claim shall be paid by the fund. The limit of liability of the fund for a claim defended by the department under subsection (a) shall be $1,000,000 per occurrence.

**(c) Concealment.—** If a claim is defended by the department under subsection (a) or paid under subsection (b) and the claim is made after four years because of the willful concealment by the health care provider or its insurer, the fund shall have the right to full indemnity, including the department's defense costs, from the health care provider or its insurer.

**(d) Extended Coverage Required.—**
Notwithstanding subsections (a), (b) and (c), all medical professional liability insurance policies issued on or after January 1, 2006, shall provide indemnity and defense for claims asserted against a health care provider for a breach of

contract or tort which occurs four or more years after the breach of contract or tort occurred and after December 31, 2005.

40 P.S. §1303.715 (emphasis added).

Here, Hospital insists it could not be vicariously liable for Radiologists' conduct. Therefore, Hospital reasons, Radiologists' services in interpreting imaging studies could not be deemed services by Hospital during the four-year period before the Third-Party Action was filed. Accordingly, Hospital argues it is entitled to coverage of its defense costs by the MCARE Fund as a matter of law.

Under the common law, a master is vicariously liable for its servant's negligent acts committed within the scope of employment. Smalich v. Westfall, 269 A.2d 476 (Pa. 1970) (citing RESTATEMENT (SECOND) OF AGENCY §219 (1958)) (further citation omitted). Notably, a hospital may be liable under agency theory, as the principal, for the negligence of surgical personnel who are its agents. Tonsic v. Wagner, 329 A.2d 497 (Pa. 1974).

Here, Hospital argues it could not be subject to vicarious liability because the contracts between itself and Radiologists' employer, and between that employer and Radiologists, demonstrate there was no actual agency relationship between Hospital and Radiologists. However, this argument is irrelevant to Third-Party Plaintiff's alternate pleading of ostensible agency, which is expressly governed by the MCARE Act.

Section 516 of the MCARE Act, 40 P.S. §1303.516, Ostensible Agency, provides:

(a) **Vicarious Liability.**—

A hospital may be held vicariously liable for the acts of another health care provider through principles of ostensible agency only if the evidence shows that:

(1) a reasonably prudent person in the patient's position would be justified in the belief that the care in question was being rendered by the hospital or its agents; or

(2) the care in question was advertised or otherwise represented to the patient as care being rendered by the hospital or its agents.

(b) **Staff Privilieges.**— Evidence that a physician holds staff privileges at a hospital shall be insufficient to establish vicarious liability through principles of ostensible agency unless the claimant meets the requirements of subsection (a)(1) or (2).

40 P.S. §1303.516 (Section 516) (emphasis added). Notably, the MCARE Act is consistent with pre-existing common law on this point. See Walls v. Hazleton State Gen. Hosp., 629 A.2d 232, 237 (Pa. Cmwlth. 1993) (citing Capan v. Divine Providence Hosp., 430 A.2d 647, 649 (Pa. Super. 1980)) (hospital may be vicariously liable for negligence of independent contractor where patient has reasonable belief he is being treated by hospital; "changing role of the hospital in society creates a likelihood that patients will look to the institution rather than the individual physician for care").

Hospital does not assert that Third-Party Plaintiff lacked a reasonable belief that Radiologists were providing services at and on behalf of Hospital.

9

Instead, Hospital insists that Section 516 is inapplicable in determining Section 715 status. Hospital contends Section 516 addresses only the patient's belief concerning ostensible agency, and therefore serves the sole purpose of protecting patients, not shielding the MCARE Fund from its responsibility to provide defense costs. We disagree.

Where statutory language is clear, courts will not employ statutory construction principles to vary the clear meaning. See Kinney-Lindstrom v. Med. Care Availability & Reduction of Error Fund, 73 A.3d 543 (Pa. 2013) (plain language of statute is best indicator of legislative intent). Here, nothing in the plain language of Section 516 limits its applicability solely to the protection of patients.

Moreover, in Kinney-Lindstrom, our Supreme Court rejected the argument that the MCARE Act should be construed solely in favor of patients injured by professional negligence. Id. The Supreme Court found the MCARE Act also serves "the concomitant goal of enabling health care providers to obtain professional liability insurance at an affordable cost" in order to prevent qualified health care providers from choosing not to practice in Pennsylvania because of escalating malpractice premiums. Id. at 555. Further, the MCARE Act serves the additional purpose of providing certainty and predictability to medical malpractice insurers in setting their reserves, especially because the discovery rule applicable to tort claims may result in new claims even after the passage of significant time following the alleged negligent conduct. Yussen v. Med. Care Availability & Reduction of Error Fund, 46 A.3d 685 (Pa. 2012).

Acknowledging the competing interests served by the MCARE Act, our Supreme Court in <u>Kinney-Lindstrom</u> declined to construe Section 715 solely in favor of patients. We discern no reason to conclude that Section 516 serves different interests from either Section 715 or the MCARE Act generally. Consistent with our Supreme Court's analysis in <u>Kinney-Lindstrom,</u> we decline to construe Section 516 as applicable only in favor of patients.

Contrary to Hospital's argument, the record does not demonstrate the absence of any genuine issue of material fact concerning Hospital's ostensible agency. Accordingly, we are unable to conclude as matter of law that Hospital could not be subject to vicarious liability for Radiologists' allegedly negligent treatment of Third-Party Plaintiff during the four-year period preceding commencement of the Third-Party Action. Hospital's request for summary relief based on the purported absence of vicarious liability is denied.[9]

## IV. Conclusion

Based on the foregoing discussion, the Hospital Motion is denied.

---

[9] Hospital did not seek summary relief on the question of the MCARE Fund's potential liability for defense costs relating to direct liability claims asserted against Hospital in Counts IV and V of the amended complaint in the Third-Party Action. Accordingly, we do not address that issue. Nor have we been asked to address a) whether defense costs are separable for the different bases of liability asserted in the Third-Party Action, and b) if they are not separable, whether the MCARE Fund must cover all defense costs incurred by Hospital in the Third-Party Action if there is coverage for any one of the theories of liability.

Given the age of this case and the slow pace of progress, counsel shall be directed to attend a telephonic status conference in January 2019, at which trial scheduling shall be determined.

_____

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Montgomery Hospital and Medical
Center,
                   Petitioner

          v.

Bureau of Medical Care Availability
and Reduction of Error Fund
(MCARE Fund),
                 Respondent

:
:
:
:
:
:   No. 571 M.D. 2012
:
:
:
:
:
:

## **O R D E R**

**AND NOW**, this 4th day of January, 2019, upon consideration of Petitioner's motion for summary relief (Motion) and Respondent's response thereto, as well as the parties' briefs, the Motion is **DENIED**. Respondent's application to strike Petitioner's reply brief is **DISMISSED AS MOOT**.

A status conference shall be held on Monday, January 28, 2019, at 1:30 p.m., by telephone conference call. Trial scheduling shall be determined. The conference call shall originate from the chambers of a judge designated by the Commonwealth Court and shall be made to the offices of counsel of record. **Cell phones may not be used.**

_____
ROBERT SIMPSON, Judge
