# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michele Pizzuti, Individually and as the : 
Executrix of the Estate of Thomas : 
Pizzuti, Deceased, as assignee of Mary : 
Christine Dunham, the Executrix of the : 
Estate of Douglas A. Dunham, MD, : 
                Petitioner : 
                        : No. 206 M.D. 2021
             v. : 
                        : Argued:  September 9, 2024
Pennsylvania Insurance Department, : 
Medical Care Availability and : 
Reduction of Error Fund; Care : 
Professional Liability Association, LLC : 
d/b/a Care Risk Retention Group, Inc.; : 
Trinity Physician Financial & Insurance : 
Services; and Joseph Hong, : 
                Respondents : 

BEFORE:   HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

## *OPINION NOT REPORTED*

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                            **FILED:  October 22, 2024**

       Michele Pizzuti (Pizzuti), individually and as executrix of the estate of Thomas Pizzuti, deceased, and as assignee of Mary Christine Dunham, executrix of the estate of Douglas A. Dunham, M.D. (Dunham), filed an application for summary relief in this Court's original jurisdiction against only the Pennsylvania Insurance Department (Department), Medical Care Availability and Reduction of Error Fund (MCARE Fund), and Care Professional Liability Association, LLC, doing business as Care Risk Retention Group, Inc. (Care).[1]  The MCARE Fund cross-applied for

---

[1] The MCARE Fund claims the caption incorrectly identifies several parties, *see* MCARE Fund's Appl. for Summ. Relief, 5/8/24, at 2, but no one has moved to correct the caption.  This

summary relief against Pizzuti. We grant in part and deny in part the MCARE Fund's application for summary relief, as set forth below, and dismiss the MCARE Fund from the action. We deny Pizzuti's application for summary relief only as to the MCARE Fund and as set forth below. Because only private parties remain, we transfer the matter to the Court of Common Pleas of Washington County for further proceedings, including disposition of Pizzuti's application for summary relief as to Care.

## I. BACKGROUND[2]

The parties generally do not dispute the following. In 2013, Dunham was the primary care physician for the deceased. *Pizzuti I*, 2022 WL 628465, at *1. Dunham ordered medical tests for the deceased but allegedly did not notify the deceased of certain adverse test results. *Id.* "Later that year, following a federal criminal investigation, . . . Dunham voluntarily surrendered his medical license and closed his practice." *Id.*

Care had insured Dunham for any malpractice claims filed in 2013. *Id.* at *2. Because Dunham closed his practice, Dunham purchased extended tail coverage from Care. *Id.* Under Care's extended tail coverage, Care insured Dunham for any malpractice claims filed prior to September 2017, limited to any malpractice that occurred in 2013. *Id.* In other words, Care's extended tail coverage "provides coverage for claims filed after a claims policy lapsed if the claims are related to acts

Court previously dismissed Trinity Physician Financial & Insurance Services (Trinity) and Joseph Hong from the case although they remain on the caption. *Pizzuti v. Pa. Ins. Dep't* (Pa. Cmwlth., No. 206 M.D. 2021, filed March 4, 2022) (*Pizzuti I*), 2022 WL 628465, *1, 12. We may also interchangeably refer to Dunham as Dunham's estate.

[2] "We examine the record, which consists of all pleadings, as well as any depositions, answers to interrogatories, admissions, affidavits, and expert reports, in a light most favorable to the non-moving party, and we resolve all doubts as to the existence of a genuine issue of material fact against the moving party." *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 962 A.2d 639, 647 (Pa. 2009).

2

that occurred while the claims policy was in effect." *Id.* at *2 n.3 (cleaned up).

In 2016, a new doctor treated the deceased and ordered a new test, which led to a diagnosis of terminal prostate cancer. *Id.* at *1. In 2018, Dunham died, and the Pizzutis sued Dunham's estate for medical malpractice. *Id.* at *2. In early October 2018, Dunham's estate reported the claim to Care, requesting Care to defend and indemnify Dunham's estate. *Id.* Apparently, Care denied coverage that same month. Care reasoned that its tail policy had expired in 2017, *i.e.*, prior to the Pizzutis' lawsuit against Dunham's estate. Ex. 4 to MCARE Fund's Appl. for Summ. Relief.

In late October 2018, Dunham submitted a claim to the MCARE Fund, which similarly requested that the MCARE Fund defend and indemnify Dunham's estate. The MCARE Fund denied coverage, reasoning "[t]here was no prior notice of this claim and the carrier that issued the extended reporting coverage has denied coverage due to the expiration of the extended reporting period." *Id.* Further, the MCARE Fund argued that it was Care's obligation "to provide a defense, not" the MCARE Fund's obligation. *Id.*

In 2019, the Pizzutis and Dunham's estate settled the medical malpractice action for $1 million. *Id.* *2. As part of the settlement, Dunham's estate assigned to the Pizzutis its right to pursue insurance coverage against Care and the MCARE Fund. *Id.*

In 2021, the deceased died and Pizzuti sued, *inter alia*, Care and the MCARE Fund in this Court seeking a declaratory judgment. *Id.* Specifically, Pizzuti seeks a declaration that the MCARE Fund improperly denied coverage and a defense to Dunham's estate. *Id.* In the alternative, Pizzuti seeks a declaration that Care breached its duty to provide the required insurance coverage under Section 715(d) of

3

the Medical Care Availability and Reduction of Error Act (MCARE Act), 40 P.S. § 1303.715(d).[3] *Id.* For relief, Pizzuti requests that they pay the $1 million settlement. *Id.*[4]

In response, Care and the MCARE Fund filed preliminary objections, which the *Pizzuti I* Court sustained in part and overruled in part. *Id.* at *12. Specifically, the Court permitted Pizzuti's claims to proceed against Care and the MCARE Fund. *Id.*[5] The *Pizzuti I* Court reasoned that at this stage of the proceedings, it was unable to determine whether "Care violated its obligation to provide suitable tail coverage to . . . Dunham under the MCARE Act or whether Care was obligated to indemnify and defend the Dunham Estate in the underlying malpractice action. Consequently, we are unable to determine whether the MCARE Fund was responsible, in whole or in part, for defense and indemnity under" 40 P.S. § 1303.715(a). *Id.* *10.

Care and the MCARE Fund filed answers and new matters. In relevant part, the MCARE Fund asserted that the statute of limitations barred Pizzuti's "right to maintain this declaratory judgment action . . . ." MCARE Fund's Answer & New Matter, 4/4/22, ¶ 69; *see also* Pa.R.Civ.P. 1030. The MCARE Fund alternatively maintained that it conditionally provides (1) excess coverage or (2) coverage under 40 P.S. § 1303.715(d). MCARE Fund's Answer & New Matter, ¶ 44. With respect to the former, the MCARE Fund alleged that Dunham failed to "maintain basic insurance coverage that is applicable to a claim" in order to trigger the MCARE Fund's excess coverage. *Id.* ¶ 45. With respect to the latter, the MCARE Fund

---

[3] Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. § 1303.715(d).

[4] Specifically, a declaratory judgment that "one, some and/or all [Respondents] are obligated to pay the $ 1,000,000.00 settlement." *Pizzuti I*, 2022 WL 628465, at *3.

[5] The *Pizzuti I* Court sustained the preliminary objections seeking to strike Pizzuti's claim for attorneys' fees and costs. *Pizzuti I*, 2022 WL 628465, at *12. The Court also sustained the preliminary objections filed by Trinity and Hong and dismissed them from the case. *Id.*

asserted that under 40 P.S. § 1303.715(d), the MCARE Fund would provide primary coverage only for medical malpractice claims that occur before December 31, 2005. *Id.* ¶ 47. In other words, under 40 P.S. § 1303.715(d), the MCARE Fund would not cover "medical professional liability claims that are asserted four (4) or more years after the alleged tort occurred and that occurred after December 31, 2005," and Pizzuti's malpractice occurred in 2013. *Id.* (citing Pa. House Legis. J., 186th Session of the Gen. Assembly, Jan. 29, 2002, at 102).

Eventually, the MCARE Fund applied for summary relief. Pizzuti also applied for summary relief against Care and the MCARE Fund. On September 3, 2024, Care filed a brief in opposition to Pizzuti's application for summary relief.

## II. ISSUES

The MCARE Fund raises three issues in its application for summary relief. First, the MCARE Fund contends it had no duty to defend or indemnify Dunham in the underlying medical malpractice action. MCARE Fund's Br. in Supp. of Summ. Relief, 5/8/24, at 4. Second, the MCARE Fund has no legal obligation to provide excess insurance coverage. *Id.* Third, the MCARE Fund asserts that Pizzuti's claim is time-barred under the statute of limitations. *Id.*

In support of her application for summary relief, Pizzuti also raises three issues. First, Pizzuti contends that under the MCARE Act, Care was required to defend Dunham in the underlying medical malpractice action. Pizzuti's Br. in Supp. of Summ. Relief, 5/20/24, at 3. Second, Pizzuti contends that the MCARE Fund was required to provide excess insurance coverage. *Id.* Third, Pizzuti alternatively argues that if Care had no legal duty, then the MCARE Fund was obligated to step in under 40 P.S. § 1303.715(a). *Id.*

5

### III. DISCUSSION[6]

Before summarizing the parties' arguments, we briefly discuss the MCARE Act. Under the MCARE Act, a medical doctor is required to have a minimum level of professional liability insurance and "participate in the MCARE Fund." *Hosp. & Healthsystem Ass'n of Pa. v. Commonwealth*, 77 A.3d 587, 592 (Pa. 2013) (*Healthsystem*). Accordingly, "private carriers serve in the role of primary insurers with initial indemnity and defense obligations, and the [MCARE] Fund serves, in essence, to provide a layer of excess coverage." *Yussen v. Med. Care Availability & Reduction of Error Fund*, 46 A.3d 685, 686 (Pa. 2012) (citations omitted). In other words, the "MCARE Fund provides a secondary layer of liability coverage to providers by paying, subject to the fund's liability limits, damages awarded in medical malpractice actions in excess of the required minimum level of professional liability coverage." *Healthsystem*, 77 A.3d at 592 (citation omitted).

Turning to the statutory language of the MCARE Act, a "basic coverage insurer . . . shall provide a defense to a medical professional liability claim, including a defense of any potential liability of the fund," subject to the conditions set forth in 40 P.S. § 1303.715, which addresses extended claims. Section 714(c) of the MCARE Act, 40 P.S. § 1303.714(c). If certain conditions are met, then the MCARE Fund may also act as a basic, primary coverage insurer. *See id.* § 1303.715(a).[7] Nevertheless,

---

[6] We may grant summary relief "only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Summers v. Certainteed Corp.*, 997 A.2d 1152, 1159 (Pa. 2010) (cleaned up). We must "take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party," and "resolve all doubts as to the existence of a genuine issue of material fact against the moving party, and, thus, may only grant summary judgment where the right to such judgment is clear and free from all doubt." *Id.* (cleaned up). Questions involving statutes are questions of law, and we are guided by the Statutory Construction Act of 1972, 1 Pa.C.S. § 1501-1991. *Corman v. Acting Sec'y of Pa. Dep't of Health*, 266 A.3d 452, 486 (Pa. 2021).

[7] In relevant part, 40 P.S. § 1303.715(a) provides as follows:

"notwithstanding" those conditions, "all medical professional liability insurance policies issued on or after January 1, 2006, shall provide indemnity and defense for claims asserted against a health care provider for a breach of contract or tort which occurs four or more years after the breach of contract or tort occurred and after December 31, 2005." *Id.* § 1303.715(d) (cleaned up).[8]  In other words, because a doctor must be insured by a private malpractice carrier, the MCARE Fund's statutory obligation to act as a basic, primary coverage insurer under 40 P.S. § 1303.715 applies only to torts occurring before December 31, 2005.  *Yussen*, 46 A.3d at 686 n.2 (explaining that the MCARE Fund may be conditionally required to provide the "initial indemnification and funding [of] the defense of the underlying civil action, which the parties term first-dollar indemnity and cost of defense," for torts occurring

---

**(a) General rule.**—If a medical professional liability claim against a health care provider who was required to participate in the Medical Professional Liability Catastrophe Loss Fund under section 701(d) of the act of October 15, 1975 (P.L. 390, No. 111), known as the Health Care Services Malpractice Act, is made more than four years after the breach of contract or tort occurred and if the claim is filed within the applicable statute of limitations, the claim shall be defended by the department if the department received a written request for indemnity and defense within 180 days of the date on which notice of the claim is first given to the participating health care provider or its insurer.

40 P.S. § 1303.715(a).

[8] 40 P.S. § 1303.715(d) states as follows:

**(d) Extended coverage required.**—Notwithstanding subsections (a), (b) and (c), all medical professional liability insurance policies issued on or after January 1, 2006, shall provide indemnity and defense for claims asserted against a health care provider for a breach of contract or tort which occurs four or more years after the breach of contract or tort occurred and after December 31, 2005.

40 P.S. § 1303.715(d); *see also* Pa. House Legis. J., 186th Session of the Gen. Assembly, Jan. 29, 2002, at 102 (explaining that 40 P.S. § 1303.715(d) "would *eliminate the fund's liability* for . . . claims on any malpractice occurrences taking place after December 31, 2002" (emphasis added)). The MCARE Act substituted "2005" for "2002" upon actual passage.  *See* 40 P.S. § 1303.715(d).

"on or *before* December 31, 2005" (emphasis added)).[9] We next summarize the parties' arguments.

In relevant part, the MCARE Fund argues it has no statutory obligation to defend and indemnify Dunham because the underlying malpractice occurred in 2013, well after December 31, 2005. MCARE Fund's Br. in Supp. of Appl. for Summ. Relief, 5/8/24, at 7. In other words, 40 P.S. § 1303.715, "read as a whole . . . places the burden of defense" and indemnification for any alleged malpractice that "occurred after December 31, 2005, onto private insurers—not" the MCARE Fund. *Id.* at 10.

Pizzuti counters that nothing within 40 P.S. § 1303.715(d) relieves the MCARE Fund from its statutory obligation to be the primary insurer for claims that comply with 40 P.S. § 1303.715(a). Pizzuti's Br. in Supp. of Appl. for Summ. Relief, at 25. *Contra id.* at 17 (acknowledging that the MCARE Fund was not intended to be the primary insurer for torts occurring after December 31, 2005).[10]

Instantly, we respectfully agree with the MCARE Fund. Section 1303.715(d) requires private insurers—not the MCARE Fund—to indemnify and defend medical malpractice claims occurring after December 31, 2005. *See* 40 P.S. § 1303.715(d). In other words, as our Supreme Court—and even Pizzuti herself recognized—the MCARE Fund's statutory obligation to act as the primary insurer applies only to torts occurring prior to December 31, 2005. *See id.*; *Yussen*, 46 A.3d

---

[9] *Accord* Pizzuti's Br. in Supp. of Appl. for Summ. Relief, 5/20/24, at 17 (conceding that the MCARE Act "intended to phase out [the] primary insurer status [of the MCARE Fund] by including 40 P.S. § 1303.715(d) which requires private medical insurance providers to indemnify and defend extended claims after January 1, 2006"). *Contra id.* at 25 (raising an alternative argument by rejecting the aforementioned interpretation).

[10] For the first time, Pizzuti alleges that the Department's commissioner violated Section 742 of the MCARE Act, 40 P.S. § 1303.742, by improperly approving Care's tail policy. Pizzuti's Br. in Supp. of Appl. for Summ. Relief, at 27. Because Pizzuti raised no such allegation in her petition for review, we deem it waived.

at 686 n.2; Pizzuti's Br. in Supp. of Appl. for Summ. Relief, at 17. The instant malpractice occurred in 2013, well after December 31, 2005. Pizzuti's counterargument fails to address the superseding nature of 40 P.S. § 1303.715(d), the *Yussen* decision, and the MCARE Act's legislative history. Accordingly, the MCARE Fund has no statutory obligation to act as the primary insurer and indemnify and defend Dunham for the 2013 malpractice.

### IV. CONCLUSION

For these reasons, we grant in part and deny in part the MCARE Fund's application for summary relief as follows. We grant the MCARE Fund's application only to the extent the MCARE Fund argued it had no statutory duty to act as the primary insurer. We deny without prejudice the MCARE Fund's application on the remaining grounds, *i.e.*, (1) it had no statutory obligation to provide excess coverage, and (2) Pizzuti untimely filed her claim beyond the statute of limitations. We dismiss only the MCARE Fund from the action.

We deny Pizzuti's application for summary relief as follows. We deny Pizzuti's application only to the extent she argued that the MCARE Fund had a statutory obligation to act as a primary insurer. We deny without prejudice Pizzuti's application on the remaining ground, *i.e.*, the MCARE Fund was required to provide excess coverage, against the MCARE Fund.

To be clear, nothing in our decision addresses the merits of the MCARE Fund's obligation, if any, to provide excess coverage. Under appropriate circumstances, Pizzuti and the MCARE Fund may reraise their arguments.[11] Because we dismiss the MCARE Fund from the action, we no longer have original

---

[11] Because Pizzuti cannot presently recover against the MCARE Fund, we need not resolve whether Pizzuti timely filed her claim within the applicable statute of limitations. If Pizzuti prevails in its claim against Care, then under appropriate circumstances, Pizzuti and the MCARE Fund may reraise their arguments that we denied without prejudice as premature.

jurisdiction and transfer the matter to the Court of Common Pleas of Washington County for further proceedings, including disposition of Pizzuti's application for summary relief against Care.[12]

_____

**LORI A. DUMAS, Judge**

---

[12] This Court's original jurisdiction is "unique in that it is predicated upon the identity of the parties and the capacity in which they sue or are sued rather than upon the nature of the cause of action asserted." *Pa. Dep't of Transp. v. Joseph Bucheit & Sons Co.*, 483 A.2d 848, 851 (Pa. 1984) (cleaned up). Our Supreme Court noted that this Court's original jurisdiction would be subverted if it included "collateral claims to which the Commonwealth is not a party." *Id.* Thus, because this Court had dismissed the claims against the Commonwealth, this Court lacked original jurisdiction to resolve the remaining claim against the private party and transferred the matter to the court of common pleas. *Cnty. of Berks v. Pa. Off. of Open Recs.*, 204 A.3d 534, 549 (Pa. Cmwlth. 2019).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michele Pizzuti, Individually and as the :
Executrix of the Estate of Thomas :
Pizzuti, Deceased, as assignee of Mary :
Christine Dunham, the Executrix of the :
Estate of Douglas A. Dunham, MD, :
           Petitioner :
            : No. 206 M.D. 2021
          v. :
           :
Pennsylvania Insurance Department, :
Medical Care Availability and :
Reduction of Error Fund; Care :
Professional Liability Association, LLC :
d/b/a Care Risk Retention Group, Inc.; :
Trinity Physician Financial & Insurance :
Services; and Joseph Hong, :
           Respondents :

## **O R D E R**

AND NOW, this 22nd day of October, 2024, we GRANT in part and DENY in part the application for summary relief filed by the Medical Care Availability and Reduction of Error Fund (MCARE Fund) as follows. We GRANT the MCARE Fund's application only to the extent the MCARE Fund argued it had no statutory obligation to act as the primary insurer. We DENY without prejudice the MCARE Fund's application on the remaining grounds as set forth herein and DISMISS the MCARE Fund from the action.

We DENY the application for summary relief filed by Michele Pizzuti (Pizzuti) as follows. We DENY Pizzuti's application to the extent she argued that the MCARE Fund had a statutory obligation to act as the primary insurer. We DENY without prejudice Pizzuti's application on the remaining grounds as set forth herein.

We TRANSFER the matter to the Court of Common Pleas of

Washington County for further proceedings, including disposition of Pizzuti's application for summary relief as to Care Professional Liability Association, LLC, doing business as Care Risk Retention Group, Inc.

_____
**LORI A. DUMAS, Judge**